UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JUVENTINA MATA, et al.,<br><br>           Plaintiffs,<br><br>    v.<br><br>MANPOWER INC. / CALIFORNIA<br>PENINSULA, et al.,<br><br>           Defendants. | Case No. 14-CV-03787-LHK<br><br>**ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANTS'<br>MOTION FOR PARTIAL SUMMARY<br>JUDGMENT**<br><br>Re: Dkt. No. 48 |

Plaintiffs Claudia Padilla and Lesli Guido ("Plaintiffs") bring this wage and hour class action against Defendants Manpower, Inc./California Peninsula ("Manpower CP"); Manpower US Inc. ("Manpower US"); Manpower Inc., now known as ManpowerGroup Inc.; and ManpowerGroup US Inc. (collectively, "Defendants"). Before the Court is Defendants' motion for partial summary judgment which contends: (1) that the court-approved settlement and release in *Willner v. Manpower Inc.* prohibits the putative class members in the instant case from pursuing the seventh, eighth, and ninth claims against Manpower Inc. in the instant case; and (2) that Manpower US was not an employer or joint employer of Plaintiffs, and thus Plaintiffs lack standing to sue Manpower US. ECF No. 48. The Court held a hearing on Defendants' motion on

1

January 21, 2016.  Having considered the parties' submissions, the record in this case, and the relevant law, the Court hereby GRANTS in part and DENIES in part Defendants' motion.

## I.      BACKGROUND

### A. The Manpower Defendants

Manpower CP is a California corporation that hires individuals (known as "associates") to provide temporary staffing services to clients in California.  ECF No. 48-1 (Horne Decl.) ¶¶ 4-5.  According to their responses to requests for admission, the named Plaintiffs Padilla and Guido were employees of Manpower CP.  ECF No. 48-8 at 3-4 (Padilla); ECF No. 48-9 at 28-29 (Guido).

Manpower US, a Delaware corporation, similarly provides temporary staffing services.  ECF No. 48-1 ¶¶ 6-7.  Manpower US began operating under the Manpower US name in December 2012 and began operating in California in July 2013.  *Id.*

Manpower CP and Manpower US are wholly-owned subsidiaries of ManpowerGroup Inc. (which was formerly known as Manpower Inc.).  *Id.* ¶ 2.

A separate entity, Manpower Group US Inc., provides high-level oversight for both Manpower CP and Manpower US, ECF No, 48-6 ¶ 4, but it is unclear from the record whether ManpowerGroup US Inc. has a parent-subsidiary relationship with any of the other Defendants.

While ManpowerGroup US Inc.'s director of payroll services asserts that ManpowerGroup Inc. has never employed associates, *id.* ¶ 9, it appears that Manpower Inc. did employ associates in California when the company was still known by that name.  *See* ECF No. 47-3 (Order Granting Final Approval of Class Action Settlement in *Willner*).

Among other things, ManpowerGroup US Inc. provides back-office services, including payroll processing services, for Manpower CP and Manpower US.  ECF No. 48-1 ¶ 8.  Sunny Ackerman, the Vice President and General Manager of the West Division of ManpowerGroup US Inc., asserts that she oversees operations at both Manpower US and Manpower CP.  ECF No. 48-6 (Ackerman Decl.) ¶ 3.  According to Defendants, ManpowerGroup US Inc. has provided "day-to-

Case No. 14-CV-03787-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

day supervisors for the Manpower US associates, including staffing specialists, on-site managers, and branch managers." Horne Decl. ¶ 7. For Manpower CP, on the other hand, Defendants assert that ManpowerGroup US Inc. provides only "upper-level operational oversight." *Id.* ¶ 8. It is not clear from the present record whether ManpowerGroup US Inc. has a parent-subsidiary relationship with any of the other Defendants.

### B. Plaintiffs' Allegations

The named Plaintiffs Padilla and Guido allege that Defendants employed them and the class members they seek to represent "as Temporary Service Employees performing services for Defendants' clients in numerous different industries." ECF No. 81 (Second Amended Complaint ("SAC")) ¶ 19. Among other things, Plaintiffs allege that Defendants required Plaintiffs to attend an internal orientation referred to as the "Manpower Orientation" as well as trainings related to Defendants' timekeeping and other internal processes. *Id.* ¶ 23. Plaintiffs allege that Defendants required Plaintiffs to "consult with Defendants regarding the status of assignments, provide information to Defendants regarding their availability, [and] update Defendants' databases regarding changes in their qualifications." *Id.* Plaintiffs further allege that Defendants required Plaintiffs to attend client-specific orientations and meetings, including post-termination meetings. *Id.* Plaintiffs assert that Defendants did not pay Plaintiffs wages for engaging in these activities, nor did Defendants reimburse them for expenses incurred related to these activities. *Id.*

Plaintiffs filed this lawsuit, asserting several claims under California law, in California state court on May 29, 2014. ECF No. 1-1. Plaintiffs allege that Defendants: (1) failed to adequately pay Plaintiffs for reporting to work, SAC ¶¶ 84-88; (2) failed to pay wages for attending trainings and meetings, *id.* ¶¶ 89-98; (3) failed to pay wages following Plaintiffs' demands, *id.* ¶¶ 99-104; (4) failed to pay minimum wage, *id.* ¶¶ 105-114; (5) failed to provide legally compliant wage statements, *id.* ¶¶ 115-127; (6) failed to pay wages within a legally mandated timeframe, *id.* ¶¶ 128-134; and (7) failed to pay all wages upon termination, *id.* ¶¶ 135-140. Plaintiffs also assert claims under (8) California's Private Attorneys General Act ("PAGA"),

Case No. 14-CV-03787-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT

United States District Court
Northern District of California

1  *id.* ¶¶ 141-49, and (9) California's Unfair Competition Law ("UCL"), *id.* ¶¶ 150-57.

2   **C.  Other Cases Against Manpower Entities**

3    *1.  Willner*

4     This is not the first wage and hour class action filed against one or more Manpower

5  entities.  Significant to the instant motion, the case *Willner v. Manpower, Inc.*, No. 11-CV-02846-

6  JST (N.D. Cal.), was filed on March 17, 2011.  ECF No. 84-3 at 2.  Vera Willner, an hourly

7  employee of Manpower, Inc. filed a complaint alleging: (1) violations of California Labor Code

8  sections 201.3(b)(1) and 203 for failure to pay timely weekly wages; (2) violations of California

9  Labor Code section 226 for failure to furnish accurate wage statements; (3) violations of the

10  California UCL for failure to provide accurate wage statements and to pay timely wages; (4)

11  penalties under PAGA for failure to provide accurate wage statements and to pay timely wages;

12  and (5) violations of California Labor Code sections 201 and 203 for failure to pay timely wages

13  due at separation.  ECF No. 49-1 (*Willner* Dkt. No. 118, Fifth Amended Complaint).  Manpower

14  Inc. was the only named defendant in *Willner*.  *Id.* ¶ 10.

15    **2.  *Ramirez* and *Mata***

16     On February 13, 2013, Patricia Ramirez filed a putative class action complaint in Monterey

17  County Superior Court against Manpower Inc., ManpowerGroup Public Sector Inc., and

18  Manpower Group US Inc.  ECF No. 84-5 at 1.  On June 21, 2013, the *Ramirez* Defendants

19  removed the case to the U.S. District Court for the Northern District of California, No.

20  13-CV-02880-BLF.  *Id.* (Notice of Removal).  Similar to the complaint in the instant case, the

21  *Ramirez* action alleged that employees of the *Ramirez* Defendants were required to perform work

22  for which they were not paid, including attending orientations, interviews, and trainings.  *See*

23  *generally* ECF No. 85-2 (*Ramirez* Second Amended Complaint).  In May 2014, after discovering

24  that Ramirez had filed for bankruptcy and neglected to list the class action as an asset, the *Ramirez*

25  Defendants filed a summary judgment motion against Ramirez.  ECF No. 85-4 (Motion).  Just

26  after the *Ramirez* Defendants filed their motion, on May 29, 2014, Plaintiffs Padilla and Guido

27

28

United States District Court
Northern District of California

4

Case No. 14-CV-03787-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT

1   filed the *Mata* action in Monterey County Superior Court.  U.S. District Judge Beth Labson

2   Freeman granted the *Ramirez* Defendants' motion for summary judgment on July 10, 2014.  ECF

3   No. 86-1 (Order).

### 3.   The *Willner* Settlement

4

5      The *Willner* parties negotiated a settlement that would result in payment to the class and

6   release certain claims.  Concerned with how the settlement might affect their claims, the *Mata*

7   plaintiffs Guido and Padilla filed objections to the draft settlement agreement in *Willner*.  *See, e.g.*,

8   ECF No. 87-4 (*Willner* Dkt. No. 154).  Manpower Inc. responded by trying to distinguish the

9   cases.  Among other things, Manpower Inc. argued that Padilla and Guido "lack[ed] standing to

10  object" because they were employed by Manpower CP, not Manpower Inc. (the only named

11  defendant in *Willner*).  *See* ECF No. 88-4 (*Willner* Dkt. No. 162) at 1-2.  Moreover, Manpower

12  Inc. attempted to distinguish the claims at issue by arguing that Willner's request for Section 203

13  penalties was "predicated upon the late mailing of paychecks," whereas the underlying claim

14  asserted in *Mata* alleged "failure to pay any wages whatsoever for certain hours worked."  *Id.* at 4.

15  Accordingly, Manpower Inc. argued, "the claims in *Mata* are unrelated to the claims in the

16  [*Willner*] Fifth Amended Complaint."  *Id.*  Guido and Padilla renewed their objections, ECF No.

17  49-3 (*Willner* Dkt. No. 170), and filed a motion to relate the *Willner* and *Mata* cases, ECF No. 88-

18  7 (*Willner* Dkt. No. 171).  Manpower Inc. responded by again explaining its position that "the

19  request for §203 waiting time penalties in [*Willner*] 'is founded upon a claim that paychecks . . .

20  were timely mailed but untimely received' . . . while the request for §203 waiting time penalties in

21  *Mata* is founded on a completely different legal theory and a completely different set of alleged

22  facts."  ECF No. 89-1 (*Willner* Dkt. No. 181) at 2.

23      On June 22, 2015, U.S. District Judge Jon Tigar granted final approval of the *Willner* class

24  action settlement.  ECF No. 47-3 (Order Granting Final Approval of Class Action Settlement,

25  *Willner* Dkt. No. 208).  The *Willner* settlement agreement contained a release.  *See* ECF No. 49-10

26  (Joint Stipulation of Settlement and Release, *Willner* Dkt. No. 196-1) ¶ 18.  It defined "Released

27

28  Case No. 14-CV-03787-LHK
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL
    SUMMARY JUDGMENT

United States District Court
Northern District of California

5

1    Parties" as follows:

2            18. "Released Parties" mean (i) ManpowerGroup Inc. (formerly
             known as Manpower Inc.); (ii) any of their present and former
3            parents, subsidiaries and affiliated companies or entities; and (iii)
             the officers, directors, employees, partners, shareholders, agents,
4            successors, assigns and legal representatives of the entities included
             in (i) and (ii). Released parties do not include franchisees of
5            Manpower Group Inc. fka Manpower.

6    *Id.*[1]  In relevant part, the agreement defined the "Released Claims" as follows:

7            55. <u>Settlement Class Members' Release of Claims</u>: Unless he or she
             has properly elected not to participate in the Settlement pursuant to
8            its terms, each Settlement Class Member releases and discharges the
             Released Parties from Released Claims for the Release Period,
9            ***March 17, 2010 through January 20, 2012***, as follows:

10           a. <u>Released Claims</u>.  Released Claims are any and all claims . . . that
             arise out of the allegations in the Lawsuit that (1) the Released
11           Parties did not provide accurate, itemized wage statements
             containing the format or content required by California Labor Code
12           section 226, ***(2) the Released Parties did not timely pay all wages
             owed, or (3) otherwise arise from the allegations in the Lawsuit***,
13           . . . including but not limited to, claims for penalties under
             California Labor Code section 226 and/or the California Private
14           Attorneys General Act of 2004 (California Labor Code sections
             2699 et seq.), claims for unfair business practices in violation of
15           California Business and Professions Code sections 17200, et seq.,
             and related claims for damages, punitive damages, liquidated
16           damages, restitution, equitable relief, attorneys' fees, interest and
             costs.

17
             Settlement Class Members ***do not*** release the Released Parties from
18           any claims . . . ***for unpaid wages*** which is defined in the California
             Labor Code as "all amounts for labor performed" (hereafter,
19           "Unreleased Claims").

20   *Id.* ¶ 55 (emphasis added).  The agreement defined the "Settlement Class" as follows:

21           21. "Settlement Class" and "Settlement Class Member(s)" mean all
             persons who were or are employed by Manpower Inc. in California
22           as temporary employees at any time from March 17, 2010 through
             January 20, 2012 and who received their wage statements (i.e.,
23           paystub) by U.S. mail, payment card or electronic transmission,
             except individuals who were or are at the same time jointly
24           employed by a franchisee of Manpower, including, but not limited
             to, franchisee CLMP LTD., dba Manpower of Temecula.
25

26   _____

27   [1] Manpower CP operated as an independently owned Manpower franchise until 2008, when
     Manpower Inc. purchased Manpower CP.  ECF No. 48-1 (Horne Decl.) ¶ 5.

28   Case No. 14-CV-03787-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL
     SUMMARY JUDGMENT

6

1    *Id.* ¶ 21.

2        **D.  Procedural History of the Instant Lawsuit**

3        Plaintiffs Juventina Mata and Lesli Guido filed their original class action complaint against

4   Defendants in this case on May 29, 2014 in Monterey County Superior Court.  ECF No. 1-1.  The

5   original complaint sought compensation and penalties for alleged violations during a "Class

6   Period" defined as "the period of time beginning four years before the commencement of this

7   action through the date on which each class or subclass herein is confirmed."  *Id.* ¶ 2.  On July 21,

8   2014, Plaintiffs filed a First Amended Complaint ("FAC") in state court.  ECF No. 1-2, Ex. C.

9   Among other changes, the FAC added Claudia Padilla as a Plaintiff and expanded the proposed

10  Class Period to "the period of time beginning February 13, 2009 through the date of entry of

11  Judgment herein."  *Id.* ¶ 2.  Defendants filed an answer to the FAC on August 20, 2014.  ECF No.

12  1-2, Ex. F.  That same day, Defendants removed this action to the U.S. District Court for the

13  Northern District of California.  ECF No. 1.

14      On September 3, 2014, Padilla and Guido, Plaintiffs in the instant case, filed a motion in

15  the *Willner* case to consider whether the *Mata* case should be related to *Willner*.[2]  *Mata* ECF No.

16  88-7 (*Willner* Dkt. No. 171).  Judge Tigar denied that motion on September 19, 2014.  *Mata* ECF

17  No. 10 (*Willner* Dkt. No. 183).  Judge Tigar's order explained its reasoning:

18          The claim in Mata is founded on a different legal theory than the one
            presented [in *Willner*], and on a different set of alleged facts.  ECF
19          No. 171, at 3; ECF No. 181, at 3–4.  The two cases therefore do not
            "concern substantially the same parties, property, transaction or
20          event" and it is unlikely "that there will be an unduly burdensome
            duplication of labor and expense or conflicting results if the cases
21          are conducted before different Judges."

22  *Id.* at 2.

23      On July 22, 2015, the *Mata* parties filed a joint case management statement in the instant

24

25  ───────────────────

26  [2] Padilla and Guido did not initially file their motion to relate in the docket of the instant case.
    Rather, in connection with their opposition to Defendants' summary judgment motion, Plaintiffs
    filed a copy of the motion previously submitted to Judge Tigar.  *Mata* ECF No. 88-7 (filed Nov. 5,
27  2015).

                                        7
28  Case No. 14-CV-03787-LHK
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL
    SUMMARY JUDGMENT

United States District Court
Northern District of California

1    case.  ECF No. 38.  The statement indicated that there was no record that Plaintiff Juventina Mata

2    had worked for any of the Defendants.  *Id.* at 5.  The statement also indicated that Defendant

3    ManpowerGroup Public Sector, Inc. did not employ temporary non-exempt workers during the

4    Class Period in California.  *Id.*  Accordingly, on August 11, 2015, the *Mata* parties filed a

5    stipulation that dismissed with prejudice all claims against all Defendants by Plaintiff Juventina

6    Mata and dismissed the remaining Plaintiffs' claims against ManpowerGroup Public Sector, Inc.

7    ECF No. 42. Thus, Padilla and Guido are the only remaining named Plaintiffs in the instant case.

8         After obtaining leave from the undersigned judge, ECF No. 78, Plaintiffs filed a Second

9    Amended Complaint in the instant case on November 2, 2015, ECF No. 81.  The Second

10   Amended Complaint (1) added ManpowerGroup Inc. as a Defendant and (2) revised the FAC's

11   proposed class definitions.

12        On August 27, 2015, while Plaintiffs' motion for leave to file the SAC was still pending,

13   Defendants filed the instant motion for summary judgment.  ECF No. 48.  After Plaintiffs' initial

14   opposition to the motion was stricken, ECF No. 79, Plaintiffs filed a renewed opposition on

15   November 5, 2015.  ECF No. 106.  Defendants filed a reply on November 12, 2015.  ECF No.

16   120.

17   **II.    EVIDENTIARY CONSIDERATIONS**

18      **A.  Judicial Notice**

19        In connection with the pending motion, both sides request that the Court take judicial

20   notice of various documents previously filed in (1) this case; (2) in other cases in this district; and

21   (3) in the Monterey County Superior Court.  ECF Nos. 49, 84, 121.  These unopposed requests are

22   GRANTED.  *See Duckett v. Godinez*, 67 F.3d 734, 741 (9th Cir. 1995) (holding that judicial

23   notice is appropriate with respect to federal court and state court proceedings).

24      **B.  Objections**

25        In their opposition brief, Plaintiffs assert a blanket objection to several paragraphs of the

26   declarations of Sunny Ackerman and Mark Horne (including exhibits referenced therein) on the

27

28   Case No. 14-CV-03787-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL
     SUMMARY JUDGMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

basis that the proffered evidence is irrelevant, lacks foundation, is based on hearsay, and/or calls for an improper expert opinion. ECF No. 106 at 1 n.1. Plaintiffs do not explain the basis for their objections to any specific paragraph or document. Other than Plaintiffs' foundation objection, which is discussed below, to the extent that the Court can deduce the basis for Plaintiffs' objections, the objections lack merit and are overruled. Ackerman and Horne describe the business structures of the Manpower entities and thus provide facts that are clearly relevant to Plaintiffs' joint employer theory, among other issues. The documents about which these witnesses testify appear to be government or business records, providing at least a plausible basis to overcome Plaintiffs' hearsay objection. Moreover, the Court cannot discern any improper expert opinions in these witnesses' declarations.

To the extent that Plaintiffs are objecting that Defendants have not provided a sufficient foundation for Ackerman and Horne to testify about the detailed operations of Manpower CP, the issue is a closer call. This is because both witnesses are employees of ManpowerGroup US, Inc.,[3] as opposed to Manpower CP, and Defendants maintain that Manpower CP employs its own "day-to-day supervisors for the associates, including staffing specialists and branch managers." ECF No. 48 at 7. On the other hand, Plaintiffs' argument that all of the Manpower entities are joint employers is based in part on the premise that the companies share management. *See, e.g.*, ECF No. 106 at 15 (citing testimony from Horne to argue that Ackerman "has responsibility for employees of both Manpower California Peninsula and Manpower US"). Accordingly, the Court finds that Defendants have laid a sufficient foundation for these witnesses' testimony, and Plaintiffs' objection is overruled.

## III.    LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the

---

[3] ECF No. 48-1 (Horne Decl.) ¶ 2; ECF No. 48-6 (Ackerman Decl.) ¶ 2.

Case No. 14-CV-03787-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1    case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is

2    genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving

3    party.  *Id.*

4          The party moving for summary judgment bears the initial burden of identifying those

5    portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

6    issue of material fact.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).  Where the moving

7    party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no

8    reasonable trier of fact could find other than for the moving party.  But on an issue for which the

9    opposing party will have the burden of proof at trial, the moving party need only point out "that

10   there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

11         Once the moving party meets its initial burden, the nonmoving party must go beyond the

12   pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a

13   genuine issue for trial.  *See* Fed. R. Civ. P. 56(c)(1)(A).  The court is only concerned with disputes

14   over material facts, and "[f]actual disputes that are irrelevant or unnecessary will not be counted."

15   *Anderson*, 477 U.S. at 248.  It is not the task of the court to scour the record in search of a genuine

16   issue of triable fact.  *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party

17   has the burden of identifying, with reasonable particularity, the evidence that precludes summary

18   judgment.  *Id.*  If the nonmoving party fails to make this showing, "the moving party is entitled to

19   judgment as a matter of law."  *Celotex Corp.*, 477 U.S. at 323.

20         The court's function on a summary judgment motion is not to make credibility

21   determinations or weigh conflicting evidence with respect to a disputed material fact.  *See T.W.

22   Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The evidence

23   must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn

24   from the facts must be viewed in a light most favorable to the nonmoving party.  *See id.* at 631.

25   **IV.    DISCUSSION**

26         Defendants move for summary judgment on two grounds.  First, Manpower Inc. (now

27

28   Case No. 14-CV-03787-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL
     SUMMARY JUDGMENT

United States District Court
Northern District of California

10

1   known as ManpowerGroup Inc.) contends that the settlement and release in *Willner* prohibits the

2   putative class members from pursuing in the instant case the seventh claim under California Labor

3   Code § 203, as well as the eighth and ninth claims under PAGA and the UCL, respectively.

4   Second, Manpower US contends that the named Plaintiffs were employed only by Manpower CP

5   and not Manpower US, and thus Plaintiffs lack standing to sue Manpower US.

6       **A. Effect of the *Willner* Settlement**

7           The parties initially dispute what legal standard applies to determine the preclusive effect

8   of the *Willner* settlement.  Defendants argue that the Court should apply state law to determine

9   whether res judicata precludes Plaintiffs' claims, and Plaintiffs argue that federal law should

10  apply.  The Court need not reach this issue because, as explained below, the Court finds that res

11  judicata would not bar Plaintiffs' claims either under state law[4] or under the doctrine of judicial

12  estoppel.

13          Under California law, "[r]es judicata, or claim preclusion, prevents relitigation of the same

14  cause of action in a second suit between the same parties or parties in privity with them."

15  *Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888, 896 (2002).  Claim preclusion applies when

16  three requirements are satisfied: (1) the prior proceeding resulted in a final judgment on the merits;

17  (2) the present action is on the same cause of action as the prior proceeding; and (3) the party to be

18  precluded was a party or in privity with a party to the prior proceeding.  *Boeken v. Philip Morris*

19  *USA, Inc.*, 48 Cal. 4th 788, 797 (2010) (citations omitted).  "Even if these threshold requirements

20  are established, res judicata will not be applied 'if injustice would result or if the public interest

21  requires that relitigation not be foreclosed.'"  *Consumer Advocacy Group, Inc. v. ExxonMobil*

22  *Corp.*, 168 Cal. App. 4th 675, 686 (2008) (quoting *Citizens for Open Access to Sand and Tide,*

23  *Inc. v. Seadrift Ass'n*, 60 Cal. App. 4th 1053, 1065 (1998)).

24          The parties seem to dispute not only the preclusive effect of the *Willner* settlement, but,

25

26  _____

27  [4] Plaintiffs also concede that a federal court sitting in diversity can incorporate state law to the
    extent that it is compatible with federal interests.  ECF No. 106 at 17-18.

                                                    11

28  Case No. 14-CV-03787-LHK
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL
    SUMMARY JUDGMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

1  more fundamentally, which claims Defendants are ***attempting*** to preclude.  In their reply brief,

2  Defendants clarify that "Manpower Inc. is not claiming the *Willner* release bars the named

3  Plaintiffs from pursuing any of their individual claims."  ECF No. 120 at 8.  Defendants explain

4  that this is because "[t]he named Plaintiffs were not on the *Willner* class list. They did not receive

5  notice of the settlement and are not bound by it."  *Id.*  Rather, Defendants argue, "Manpower Inc.

6  is simply asking this Court to rule any employee bound by the court-approved *Willner* settlement

7  is barred from pursuing the claims resolved in that case."  *Id.*  The parties' dispute, then, relates to

8  which claims were resolved in *Willner* and which individuals are bound by the *Willner* settlement.

9       Under the first res judicata factor, the parties do not appear to dispute that the *Willner*

10  settlement constitutes a final judgment on the merits.  *See* ECF No. 106 at 9 (noting that Judge

11  Tigar granted final approval of the settlement); ECF No. 120 at 9 ("The finality of the judgment in

12  *Willner* is beyond dispute.").

13      Under the second factor, in determining whether the causes of action in *Willner* and this

14  case are the same, the Court initially notes that the *Willner* settlement only encompasses claims for

15  violations that occurred from March 17, 2010 through January 20, 2012.  ECF No. 49-10 (*Willner*

16  Dkt. No. 196-1) ¶ 55.  The operative complaint in this case, on the other hand, defines a broader

17  class period: "the period of time beginning February 13, 2009, through the date of entry of

18  Judgment herein"  SAC ¶ 2.  It is undisputed that the *Willner* settlement does not preclude

19  Plaintiffs' claims for violations that occurred outside the March 17, 2010 through January 20,

20  2012 period, even for individuals who were class members in *Willner*.

21      The more difficult question is whether the causes of action are substantively the same.

22  While it is true that both the *Willner* and the *Mata* complaints recite claims under Cal. Labor Code

23  § 203, the PAGA, and the UCL,[5] Manpower Inc.'s representations in *Willner* suggest that the

24  causes of action are not the same.  For example, to overcome the *Mata* Plaintiffs' objections and

25

26  _____

27  [5] *Compare* SAC, claims 7-9, *with* ECF No. 49-1 (*Willner* Dkt. No. 118, Fifth Amended
    Complaint), claims 1, 3, and 4.

12

28  Case No. 14-CV-03787-LHK
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL
    SUMMARY JUDGMENT

United States District Court
Northern District of California

1   obtain approval of the settlement, Manpower Inc. distinguished the claims at issue by arguing that

2   Willner's request for Section 203 penalties was "predicated upon the late mailing of paychecks,"

3   whereas the underlying claim asserted in *Mata* alleged "failure to pay any wages whatsoever for

4   certain hours worked."  ECF No. 88-4 (*Willner* Dkt. No. 162) at 4.  In light of the *Mata* Plaintiffs'

5   objections, the *Willner* Court ruled that the parties needed to narrow the scope of the release in that

6   case.  ECF No. 88-6 (*Willner* Dkt. No. 177) at 12-13.  The *Willner* Court recommended that the

7   parties change the phrase "related in any way" in paragraph 55 of the release to the phrase "arise

8   out of the allegations in the operative complaint."  *Id.* (noting that "a settlement agreement may

9   preclude a party from bringing a related claim in the future even though the claim was not

10  presented and might not have been presentable in the class action, but *only* where the released

11  claim is based on the identical factual predicate as that underlying the claims in the settled class

12  action."); *see* ECF No. 49-10 ¶ 55.a (Settlement Agreement and Release, showing revision).  Even

13  after the parties amended the draft agreement as the *Willner* Court recommended, Guido and

14  Padilla again objected.  ECF No. 89-5 (*Willner* Dkt. No. 187).  Manpower Inc. responded by again

15  explaining its position that "the release only pertains to the claims alleged in the 'Lawsuit,' which

16  is specifically defined as the [Willner] Fifth Amended Complaint."  ECF No. 89-6 (*Willner* Dkt.

17  No. 189) at 3.

18      Based on Manpower Inc.'s representations regarding the scope of the *Willner* settlement,

19  the Court finds that the release was only intended to encompass claims based on untimely receipt

20  of paychecks, not claims such as those here based on a complete failure to pay.  Moreover, even if

21  Manpower Inc. intended for the release to have a broader preclusive effect, such a release would

22  have been invalid under Ninth Circuit law.  In *Hesse v. Sprint*, for example, the Ninth Circuit held

23  that "[a] settlement agreement may preclude a party from bringing a related claim in the future

24  even though the claim was not presented and might not have been presentable in the class action,

25  but *only* where the released claim is based on the identical factual predicate as that underlying the

26  claims in the settled class action."  *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010)

27

28  Case No. 14-CV-03787-LHK
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL
    SUMMARY JUDGMENT

1   (internal quotation marks omitted) (emphasis added).  The *Willner* and *Mata* cases were based on

2   different factual predicates, so it would have been impermissible for the *Willner* parties to obtain a

3   release broad enough to cover the claims in the instant case.

4          With regard to the third res judicata factor, the Court finds that there is at least a potential

5   dispute of fact as to whether the parties whose claims Defendants seek to preclude were members

6   of the settlement class in *Willner*.  The Court acknowledges that the putative class definitions in

7   this case appear quite similar to the settlement class defined in *Willner*.  *Compare* SAC ¶¶ 19, 74

8   *with* ECF No. 49-10 (*Willner* Dkt. No. 196-1) ¶ 21.  Moreover, the parties dispute whether all of

9   the Manpower entities jointly employed the putative class members in the instant case.  Thus, it is

10  unclear which putative class members, if any, in the present case would overlap with the class

11  member list created in *Willner*, a case in which Manpower Inc. was the only named defendant.

12  Moreover, the Court notes that the *Willner* class list was filed under seal. ECF No. 92-4 (*Willner*

13  Dkt. No. 206).  Thus, even if Defendants wished to show that a high percentage of the class

14  members in the present case released their claims in *Willner*, on the present record, the Court and

15  Plaintiffs' counsel would not be able to verify Defendants' assertions.

16         Based on the finality of the prior judgment, differences in the causes of action, and

17  differences in the parties in the proceedings, the Court concludes that res judicata does not bar the

18  putative class members' seventh, eighth, and ninth claims in the instant case.

19         Aside from the res judicata framework, the Court would reach the same result under the

20  doctrine of judicial estoppel.  "[J]udicial estoppel, generally prevents a party from prevailing in

21  one phase of a case on an argument and then relying on a contradictory argument to prevail in

22  another phase." *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 993 (9th

23  Cir. 2012) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)).  Courts consider three

24  factors in determining whether judicial estoppel applies:

25              First, a party's later position must be clearly inconsistent with its
                earlier position.  Second, courts regularly inquire whether the party
26              has succeeded in persuading a court to accept that party's earlier
                position, so that judicial acceptance of an inconsistent position in a
27

*United States District Court*
*Northern District of California*

14

28

> later proceeding would create the perception that either the first or the second court was misled. . . .   A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* at 993-94 (quoting *New Hampshire*, 532 U.S. at 750-51).

Here, Defendants' prior position that "the claims in *Mata* are unrelated to the claims in the [*Willner*] Fifth Amended Complaint," ECF No. 88-4 (*Willner* Dkt. No. 162) at 4, is clearly inconsistent with Defendants' present attempt at preclusion.  Moreover, the *Willner* Court accepted the proposed settlement only after ordering the parties to narrow the scope of the release to avoid capturing claims that go beyond the scope of the allegations in the *Willner* complaint. ECF No. 88-6 (*Willner* Dkt. No. 177) at 12-13; ECF No. 49-10 (*Willner* Dkt. No. 196) at 5. Defendants would certainly impose an unfair detriment on Plaintiffs if this Court were to conclude—contrary to Defendants' prior position—that the *Willner* settlement agreement released claims based on allegations that were not present in *Willner*.

Accordingly, the Court finds that the *Willner* settlement and release does not preclude the putative class members' seventh, eighth, and ninth claims under California Labor Code § 203, the PAGA, or the UCL.  Of course, any attempts by members of the *Willner* settlement class to relitigate their claims from that case are precluded.[6]

### B. Plaintiffs' Standing to Sue Manpower US

Defendants contend that summary judgment on all claims against Manpower US Inc. ("Manpower US") is appropriate because Plaintiffs have not shown that either named Plaintiff in this case, Padilla or Guido, worked for Manpower US.  Rather, Defendants contend, the named Plaintiffs worked only for Manpower, Inc./California Peninsula ("Manpower CP") and thus do not have standing to sue Manpower US.

As a formal, structural matter, Manpower CP and Manpower US are sibling corporations

---

[6] Because the Court finds that Defendants are not entitled to summary judgment on res judicata grounds, the Court need not address Plaintiffs' other arguments regarding notice, the alleged violation of Civil Local Rule 3-13, or Ms. Willner's adequacy as a class representative.

15

with a common parent, ManpowerGroup Inc. (formerly known as Manpower Inc.).  ECF No. 48-1

¶ 2.  A separate entity, ManpowerGroup US Inc., provides high-level oversight for both

Manpower CP and Manpower US, ECF No. 48-6 ¶ 4, but it is unclear from the record whether

ManpowerGroup US Inc. has a parent-subsidiary relationship with any of the other Defendants.

These relationships are illustrated graphically below:

Oversight                    ManpowerGroup US Inc.

Parent                       ManpowerGroup Inc.
                             (formerly Manpower Inc.)

Subsidiaries     Manpower Inc. /                Manpower US Inc.
                 California Peninsula            (Manpower US)
                 (Manpower CP)

Plaintiffs respond to Defendants by arguing that, notwithstanding structural formalities, this Court

should find as a matter of law that Manpower CP, Manpower US, and ManpowerGroup Inc.

(formerly Manpower Inc.) all jointly employed Plaintiffs.  Defendants concede that Manpower

CP, for whom Plaintiffs worked, and ManpowerGroup Inc., the corporate parent of Manpower CP,

are proper defendants in this case.  Defendants seek summary judgment on the claims against

solely Manpower US, the corporate sibling of Manpower CP.  Defendants contend that Manpower

US did not jointly employ Plaintiffs.

        Under California law, an entity must meet one of three tests to be liable as a "joint

employer."  An employer must either (1) exercise control over the employee's wages, hours or

working conditions; or (2) allow him to suffer work or permit him to work; or (3) engage him,

creating a common law employment relationship.  *See Futrell v. Payday California, Inc.*, 190 Cal.

App. 4th 1419, 1429 (2011) (citing *Martinez v. Combs*, 49 Cal. 4th 35, 64 (2010)).  The parties

16

United States District Court
Northern District of California

1   agree that the *Martinez* analysis applies in determining a joint employment relationship.  *See* ECF

2   No. 106 at 10; ECF No. 120 at 6.

3       Plaintiffs' opposition asserts that Defendants have not offered any evidence to refute the

4   complaints' allegations that Defendants jointly employed plaintiffs.  ECF No. 106 at 11.  To the

5   extent that plaintiffs are suggesting that Defendants have the burden of disproving the allegations

6   in Plaintiffs' complaint, this suggestion is incorrect.  Here, Plaintiffs have the burden to prove

7   wrongdoing by each named Defendant, and Defendants need only point to the absence of evidence

8   that supports Plaintiffs' allegations.  *See Celotex*, 477 U.S. at 325.

9       The Court notes that in responses to requests for admission, the named Plaintiffs Padilla

10  and Guido admitted to being employees of Manpower CP and denied being employees of

11  Manpower US.  ECF No. 48-8 at 3-4 (Padilla); ECF No. 48-9 at 28-29 (Guido).  These admissions

12  suggest that Defendants are correct that the named Plaintiffs do not have standing to sue

13  Manpower US.  Here, however, Defendants do not appear to contend that the legal determination

14  of whether Manpower US and Manpower CP were joint employers turns solely on the named

15  Plaintiffs' subjective understanding of who employed them.  Accordingly, the Court analyzes the

16  other evidence the parties have submitted.

17      While Defendants do not have the burden to disprove the existence of a joint employment

18  relationship, Defendants provided sworn declarations and supporting documents from two

19  witnesses in support of Defendants' position.  Sunny Ackerman, Vice President and General

20  Manager of the West Division of ManpowerGroup US, the entity that provides oversight for both

21  Manpower CP and its corporate sibling Manpower US, explained that she oversees both

22  Manpower CP and Manpower US at a high level, but her role with CP is limited:

23          Although I provide upper-level oversight of California operations, I
            do not exercise immediate, day-to-day control or conduct immediate
24          daily supervision of CP associates.  In this regard, my daily control
            of hourly associates who provide staffing services for clients is
25          limited.  For example, I am not involved in the candidate application
            process, the onboarding of associates, or associates' application for
26          specific assignments.  I do not communicate with associates or
            clients about specific assignment start dates, work restrictions, daily
27

28  Case No. 14-CV-03787-LHK
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL
    SUMMARY JUDGMENT

United States District Court
Northern District of California

17

work scheduling, or the rate of pay of particular associates.  I do not assist associates' with the completion of forms or documents for particular clients, or communicate directly with associates about time entry.

ECF No. 48-6 ¶ 4.  Moreover, Mark Horne, the Director of Payroll Services at ManpowerGroup US, the entity that provides oversight for both Manpower CP and its corporate sibling Manpower US, declared that "Manpower US provides no services and no operational support for CP."  ECF No. 48-1 ¶ 8.  Horne went on to explain that "Manpower US does not set the rate of pay, date of the assignment, or particular work restrictions for CP associates."  *Id.* ¶ 32.  Moreover, he states, "Manpower US employees are not involved in the day-to-day supervision of CP associates."  *Id.* ¶ 34.  Nor are Manpower US personnel involved in termination decisions of Manpower CP associates.  *Id.* ¶ 38.  In short, Defendants presented evidence suggesting that Manpower US and its employees did not jointly employ the named Plaintiffs, who nominally worked for Manpower CP, under the framework of *Martinez*.

In response to Defendants' evidence, Plaintiffs argue that some of Defendants' own evidence supports the existence of a joint employment relationship.  For example, Plaintiffs argue, Horne concedes that both Manpower CP and Manpower US are wholly-owned subsidiaries of the same corporate parent.  ECF No. 106 at 12.  Having a common corporate parent, however, does not necessarily render two corporations joint employers.  Other district courts in the Ninth Circuit have found that a plaintiff lacks standing to represent employees of corporate affiliates with which the plaintiff was not actually employed.  For example, in *Henry v. Circus Circus*, the plaintiffs worked for Mandalay Corp., a subsidiary of Mandalay Resort Group.  *Henry v. Circus Circus Casinos*, Inc., 223 F.R.D. 541, 542 (D. Nev. 2004).  Although the plaintiffs did not work for Mandalay Resort Group's other subsidiaries and joint ventures, the plaintiffs named all of these parties as defendants in a class action.  *Id.*  The court dismissed all affiliate defendants other than the corporation for which the plaintiffs actually worked and found that plaintiffs lacked standing to sue the others.  *Id.* at 543-44.  Similarly, in *Solis v. Regis Corp.*, the district court ruled that the plaintiff, an employee of Supercuts, did not have standing to serve as a class representative against

18

United States District Court
Northern District of California

1    non-Supercuts subsidiaries of Supercuts' corporate parent Regis. *Solis v. Regis Corp.*, No.

2    C 05-03039 CRB, 2006 WL 2925682, at *7 (N.D. Cal. Oct. 12, 2006). *See also Miller v. Swiss Re*

3    *Underwriters Agency, Inc.*, No. CV 09-09551 DDP (JEMx), 2010 WL 935697, at *3 (C.D. Cal.

4    Mar. 15, 2010) ("That a third entity, not named as a defendant, exercises control over both entities

5    is not sufficient" to render two companies a de facto joint enterprise.).

6            Plaintiffs also cite *Castaneda v. The Ensign Group, Inc.*, 229 Cal. App. 4th 1015, 1019

7    (2014), for the proposition that a trier of fact could infer control from evidence that a parent

8    corporation owns a subsidiary. ECF No. 106 at 12 n.11. Plaintiffs' reliance on *Castaneda* is

9    misplaced. That case concerned allegations that a parent company was a joint employer of its

10   subsidiary. There, the court held that the parent corporation could be the plaintiff's employer

11   because it exercised control over the subsidiary's business. *Id.* at 1023-24. Here, in contrast,

12   Defendants concede that Manpower CP's parent, ManpowerGroup Inc., is a proper defendant in

13   this case. Defendants seek summary judgment solely as to Manpower CP's corporate sibling,

14   Manpower US.

15          Beyond the existence of a common parent, Plaintiffs submit other evidence in an attempt to

16   raise a triable issue of fact that Manpower CP and Manpower US are joint employers. For

17   example, Plaintiffs note that according to various documents filed with the Horne declaration,

18   Manpower CP and Manpower US have the same corporate address in Milwaukee. *E.g.* ECF No.

19   48-2 Ex. 3 at 2 (Manpower US Certificate of Qualification to conduct business in California); Ex.

20   4 (Cal. Sec. of State Business Entity Detail for Manpower CP); ECF No. 48-4 Ex. 10 (exemplar

21   W-2 and earnings statements of Plaintiffs from Manpower CP); Ex. 11 (exemplar W-2 and

22   earnings statement for unnamed Manpower US associate). Plaintiffs cite no authority and provide

23   no analysis, however, to support their argument that a corporation jointly employs the personnel of

24   a sibling corporation simply because the two corporations share real estate. Under the *Martinez*

25   framework, which Plaintiffs agree this Court should apply,[7] a common address does not suggest

26

27   ───────────────
     [7] *See* ECF No. 106 at 10.

28   Case No. 14-CV-03787-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL
     SUMMARY JUDGMENT

United States District Court
Northern District of California

19

that a sibling corporation controls the employee's wages, hours, or working conditions; allows the employee to suffer work or permits him to work; or engages the employee, thereby creating a common law employment relationship.

Plaintiffs also submit evidence that Manpower CP and Manpower US share the same officers. Plaintiffs note that Jonas O. Prising signed the Amendment to the Certification of Incorporation of Manpower International Inc., which changed its name to Manpower US Inc. ECF No. 48-2 Ex. 2. Mr. Prising is also listed as the contact for the mailing address of Manpower CP in that company's business license for the City of Watsonville, California. ECF No. 48-2 Ex. 5 at 5. Moreover, as noted, Ms. Ackerman concedes that she exercises at least some level of oversight for both Manpower CP and its corporate sibling, Manpower US. *See* ECF No. 48-6 ¶¶ 3-4. Once again, however, Plaintiffs cite no authority and provide no analysis in support of their argument that shared management renders one sibling corporation the joint employer of another sibling corporation's employees under any of the tests for joint employment set forth in *Martinez*.

Finally, Plaintiffs cite deposition testimony indicating that the checks used to pay the employees of both Manpower CP and its corporate sibling, Manpower US, were drawn on the same bank. ECF No. 99-3 (Horne Dep. Tr.) at 278:24-279:4. Similarly, the funds that were used to pay employees of the corporate parent Manpower, Inc., which is now called ManpowerGroup Inc., were drawn from the same account as funds used to pay employees of Manpower CP. *Id.* at 279:5-11. Use of shared accounts does not create a joint employment relationship, however. The *Solis* Court, for example, found that "[a]ll paychecks for California employees of Regis subsidiaries were drawn on the same bank," 2006 WL 2925682, *2, but the court nevertheless found that the named plaintiff did not have standing to sue subsidiaries for which she did not actually work.

All of the evidence Plaintiffs have proffered suggests that a common entity exerts control over both Manpower CP and its corporate sibling, Manpower US. Plaintiffs' evidence misses the mark, however, because Defendants do not dispute that Manpower CP and its corporate sibling,

United States District Court
Northern District of California

1   Manpower US, share a common parent.  Rather, Defendants argue that Plaintiffs have offered no

2   evidence to create a triable issue of fact on the issue of whether Manpower US, the corporate

3   sibling of Manpower CP, is a joint employer of persons employed by Manpower CP.  The Court

4   agrees that Plaintiffs have not presented sufficient evidence to create a triable issue of fact on this

5   issue.  Accordingly, because Manpower US was not an employer or joint employer of Guido and

6   Padilla, the named Plaintiffs do not have standing to sue Manpower US for violations under the

7   California Labor Code and related provisions.

8   **V.      CONCLUSION**

9          For the foregoing reasons, Defendants' motion for summary judgment is GRANTED in

10   part and DENIED in part.  Defendants' motion for summary judgment that the settlement and

11   release in *Willner* preclude the putative class members' seventh, eighth, and ninth claims against

12   Manpower Inc. is DENIED.  Defendants' motion for summary judgment that Plaintiffs Padilla and

13   Guido lack standing to pursue claims against Manpower US is GRANTED.

14   **IT IS SO ORDERED.**

15   Dated:  January 31, 2016

16          _____

17          LUCY H. KOH
            United States District Judge

18

19

20

21

22

23

24

25

26

27                                                    21

28   Case No. 14-CV-03787-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL
     SUMMARY JUDGMENT

United States District Court
Northern District of California