B. James Fitzpatrick #129056
Charles Swanston #181882
**FITZPATRICK, SPINI & SWANSTON**
555 S. Main Street
Salinas, California 93901
Telephone: (831) 755-1311
Facsimile: (831) 755-1319
E-Mail: bfitzpatrick@fandslegal.com
E-Mail: cswanston@fandslegal.com

Patrick D. Toole #190118
**WANGER JONES HELSLEY PC**
265 E. River Park Circle, Suite 310
Fresno, California 93720
Telephone: (559) 233-4800
Facsimile: (559) 233-9330
E-Mail: ptoole@wjhattorneys.com

Attorneys for: Plaintiffs Claudia Padilla and Lesli Guido on behalf of themselves, and all other similarly aggrieved employees.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUVENTINA MATA, CLAUDIA PADILLA AND LESLI GUIDO on behalf of themselves and all others similarly aggrieved employees,<br><br>Plaintiffs,<br><br>v.<br><br>MANPOWER, INC./CALIFORNIA PENINSULA; MANPOWER US INC.; MANPOWER, INC.; MANPOWERGROUP PUBLIC SECTOR INC; MANPOWERGROUP US INC.; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 5:14-cv-03787-LHK<br><br>**DECLARATION OF CHARLES SWANSTON IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDER (1) CONDITIONALLY CERTIFYING THE SETTLEMENT CLASS, (2) PRELIMINARILY APPROVING THE CLASS ACTION SETTLEMENT, (3) DIRECTING THE DISTRIBUTION OF THE CLASS NOTICE PACKET, AND (4) SETTING A HEARING FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT**<br><br>Date: September 8, 2016<br>Time: 1:30 p.m.<br>Crtrm: 8<br>Judge: Hon. Judge Lucy H. Koh<br><br>Complaint Filed: May 29, 2014<br>Notice of Removal Filed: August 20, 2014<br>Trial Date: March 20, 2017 |

*Mata, et al. v. Manpower, Inc./California Peninsula, et al.*
Case No.: 5:14-cv-03787-LHK

Declaration of Charles Swanston in Support of
Plaintiffs' Motion for Preliminary Approval of
the Class Action Settlement

I, Charles Swanston, do hereby declare as follows:

1.     I am an attorney duly licensed to practice before all courts of the State of California. I am a partner in the law firm of Fitzpatrick, Spini & Swanston, and am an attorney of record for Plaintiffs Claudia Padilla and Lesli Guido in the above-captioned matter. I have personal knowledge of the facts set forth below, except for those items stated upon information and belief, and as to those matters, I believe them to be true.  If called upon to testify to the matters herein, I could and would be competent and willing to do so.

**I.     INTRODUCTION**

2.     Plaintiffs Claudia Padilla and Lesli Guido seek preliminary approval of a proposed settlement on a class basis against Defendants Manpower, Inc./California Peninsula; ManpowerGroup, Inc., formally Manpower Inc.; and ManpowerGroup US Inc. (collectively "Defendants" and/or "Manpower").  I make this declaration in support of Plaintiffs' Motion for Order (1) Conditionally Certifying Settlement Class; (2) Preliminarily Approving the Class Action Settlement; (3) Directing the Distribution of the Class Notice Packet; and (4) Setting a Hearing for Final Approval of the Class Action Settlement and Award of Attorney Fees and Costs for September 8, 2016.

3.     Plaintiffs seek to represent a settlement class of approximately 58,500 temporary workers employed by Manpower in California during Class Periods beginning April 12, 2009 (for temporary workers employed by Manpower, Inc./California Peninsula) and February 13, 2009 (for temporary workers employed by Manpower Inc., ManpowerGroup Inc., and ManpowerGroup US Inc.), both Class Periods ending on preliminary approval.  Docket No. 155.

4.     Our initial investigation suggested that these employees were required to perform work for which they were not paid, consisting of tasks performed before, during and after being assigned to Defendants' clients. At the pre-assignment stage, unpaid work generally consisted of attending orientations concerning Defendants' policies and procedures; participating in training sessions, testing, and skills assessments; and attending interviews with Defendants' clients, which often included background checks. At the post-assignment stage, unpaid work involved attending client orientation meetings where temporary employees were introduced to their duties and the

Declaration of Charles Swanston in Support of
Plaintiffs' Motion for Preliminary Approval of
the Class Action Settlement

client's requirements of its employees; ongoing reporting and monitoring with Defendants' staffing specialists regarding the assignment; and completion of time records and similar administrative documents. After assignments were terminated, unpaid work generally involved completing forms and administrative paperwork; attending post-termination meetings; and providing updated reports concerning skills, qualifications and availability. Because neither the time involved in these tasks nor any reference to wages for such time were included in their wage statements, Plaintiffs and the putative class members received inaccurate, incomplete and late wage statements. Based upon these alleged practices, Plaintiffs asserted claims for unpaid wages, violations of California's reporting time laws, equitable relief under the unfair competition laws and associated penalties.

## II. HISTORY OF THE CASE AND SETTLEMENT NEGOTIATIONS

### A. <u>Procedural History</u>[1]

5. Following our initial investigation, on May 29, 2014, counsel for Plaintiffs filed a lawsuit in Monterey County Superior Court on their behalf and on behalf of all other similarly situated employees against Manpower, Inc./California Peninsula, Manpower US Inc., Manpower Inc., ManpowerGroup Public Sector Inc., and ManpowerGroup US Inc. On July 21, 2014, Plaintiffs filed a First Amended Class Action Complaint ("FAC") naming Claudia Padilla as an additional named plaintiff and class representative and alleging two additional causes of action. On August 20, 2014, Manpower's answer was filed and they removed the action to the United States District Court, Northern District of California.

6. Upon further investigation it was determined that Juventina Mata was never given an assignment by Manpower and did not execute pre-hire documents. Consequently, she was believed to be a less suitable class representative than the other named Plaintiffs. Plaintiffs also confirmed that ManpowerGroup Public Sector, Inc. never employed workers in California during the Class Period. Therefore, on August 13, 2015, the parties agreed to dismiss Juventina Mata and ManpowerGroup Public Sector Inc.

7. Further investigation disclosed that Manpower Inc. had undergone a name change

---

[1] A comprehensive procedural history is provided in the Declaration of Patrick D. Toole, Esq. filed herewith.

*Mata, et al. v. Manpower, Inc./California Peninsula, et al.*
Case No.: 5:14-cv-03787-LHK

Declaration of Charles Swanston in Support of
Plaintiffs' Motion for Preliminary Approval of
the Class Action Settlement

during the course of this litigation, changing its name to ManpowerGroup Inc. After learning of this, on August 13, 2015, Plaintiffs filed a motion for leave to file a second amended complaint pursuant to Fed. R. Civ. P. 15(a), requesting leave to name ManpowerGroup Inc. as a defendant. Plaintiffs further requested leave to revise and define the FAC's definitions of the proposed classes and enlarge the class period so that it began on March 17, 2007, and continued through the date of entry of Judgment, based upon Plaintiffs' contention that the limitation periods applicable to the class claims alleged in Plaintiffs' FAC were tolled as the result of the putative class action complaints filed in *Willner v. Manpower, Inc.*, U.S.D.C., Northern District of California, Case No. 3:11-cv-02486-JST ("*Willner*"), and *Ramirez v. Manpower Inc.*, U.S.D.C., Northern District of California, Case No. 5:13-cv-2880-EJD. Plaintiffs' motion for leave to file a second amended complaint to name ManpowerGroup Inc. and to revise the FAC's proposed class definitions was granted. The Court however, denied Plaintiffs' motion for leave to amend the FAC to extend the class period consistent with the *Willner*. On November 2, 2015, Plaintiffs filed their Second Amended Complaint ("SAC").

8.      On December 8, 2015, Manpower filed a motion to strike certain allegations in the SAC. The Court granted in part and denied in part the motion, striking the March 17, 2011, beginning date of the SAC's class period and denying Defendants' motion to strike allegations that Defendants failed and refused to pay agreed wages, failed to pay minimum wages, and were liable on PAGA claims.

### B.      History of Discovery[2]

9.      Throughout this litigation, which has been ongoing for more than two years, the parties have exchanged a significant amount of formal and informal discovery. My office has diligently pursued Plaintiffs' class claims during the pendency of this action, serving Manpower with multiple sets of written discovery, including two sets of interrogatories, three sets of requests for admissions, and four sets of requests for production of documents. Manpower responded to each of these written discovery requests and has also supplemented its responses to the two requests for production of documents. We participated in good faith efforts to resolve numerous discovery issues

---

[2] A comprehensive discovery history is provided in the Declaration of Patrick D. Toole, Esq. filed herewith.

*Mata, et al. v. Manpower, Inc./California Peninsula, et al.*      Declaration of Charles Swanston in Support of
Case No.: 5:14-cv-03787-LHK                                       Plaintiffs' Motion for Preliminary Approval of
                                                                  the Class Action Settlement

with Defendants' counsel, and prepared and filed multiple motions to compel additional deposition testimony and document production after exhausting all efforts to resolved discovery issues in a reasonable manner. We received, reviewed and analyzed thousands of pages of documents; interviewed numerous putative class members and analyzed the results of those interviews; took multiple out of state depositions of Defendants' officers; defended Plaintiffs' depositions; retained and consulted with experts; pursued matters in law and motion as necessary; and researched numerous legal issues applicable to the claims alleged in the complaint, procedural matters and defenses asserted in the answer.

### C.  Settlement Negotiations

10.     The parties attended mediation on January 5, 2016, with mediator Mark A. Rudy, Esq., an independent mediator with significant experience in wage and hour class actions.  Each party was represented by counsel, and though the day-long mediation session did not culminate in a settlement, protracted good faith negotiations were conducted and a second mediation with Mr. Rudy was scheduled for May 10, 2016.  Though the parties failed to reach a settlement during the second mediation session, the parties continued to engage in protracted settlement negotiations with the assistance of Mr. Rudy, who helped the parties eventually arrive at the proposed settlement, the terms of which are set forth in the parties' Joint Stipulation of Class Action Settlement ("Settlement"), a true and correct copy of which is attached hereto as Exhibit "A."

11.     Attached to the Settlement as Exhibits 1 and 2 is the Notice of Settlement and the Opt-Out Form (collectively "Notice Packet"), which have been negotiated and agreed upon by the parties. The parties have proposed a plan for distributing the Notice Packet in English and Spanish to the class members with the primary goal of reaching as many class members as possible. Settlement, ¶ 34.  It has been Plaintiffs' counsels' experience that the most successful and effective method of providing notice regarding settlement is by mail.  The distribution plan includes steps to update addresses that have resulted in returned addresses before mailing and provides for re-mailing notices to updated addresses. The Notice Packet has been written in clear, plain language, allowing it to be easily understood by the class members. The Notice of Settlement provides sufficient information about the case and the Settlement and adequately informs class members of their rights

Mata, et al. v. Manpower, Inc./California Peninsula, et al.     Declaration of Charles Swanston in Support of
Case No.: 5:14-cv-03787-LHK                              Plaintiffs' Motion for Preliminary Approval of
                                                          the Class Action Settlement

and obligations under the terms of the Settlement. Simple, straightforward instructions are provided to the class members enabling them to ascertain the approximate amount they might expect to receive and to make an informed decision about whether to opt out or object to the Settlement and to exercise their right to be heard at the final approval hearing. The Opt-Out Form is included in the Notice Packet for those class members who wish to exclude themselves from the Settlement. Class members are advised to call the Settlement Administrator and/or Plaintiffs' counsel and speak to a representative in Spanish or in English to answer any questions regarding the lawsuit and/or the Settlement process.

## III. FAIRNESS AND ADEQUACY OF THE PROPOSED SETTLEMENT

12. <u>Proposed Terms of the Settlement</u>: Under the terms of the Settlement, Defendants will pay a maximum gross settlement amount of $2,900,000.00 (inclusive of employer payroll taxes). (Settlement, ¶ 19.) From the $2,900,000.00 gross settlement payment, the following payments are made:

(1) a $7,500.00 payment to each Plaintiff to compensate them for their services as Class Representatives *Settlement, ¶ 26*;

(2) Plaintiffs' attorneys' fees in an amount up to $725,000.00 (25% of the gross settlement amount) and costs as approved by the Court (costs to date are approximately $68,000.00) *Settlement, ¶ 25*;

(3) the Settlement Administrator's fees not to exceed $200,000.00 for administration of the Settlement. *Settlement, ¶ 32.* Attached hereto as Exhibit B is the fee estimate from the Settlement Administrator, CPT Group, Inc.; and

(4) payment to the Labor and Workforce Development Agency in connection with the settlement of the PAGA claim in the amount of $18,750.00. *Settlement, ¶ 27*

13. After the distribution of these amounts, the remainder of approximately $1,873,250.00 ("Net Settlement Amount") will be distributed to the class members who do not timely exclude themselves from the Settlement. *Settlement, ¶¶ 24, 36.*[3]

---

[3] The payment to the class members will be allocated as 1/3 wages, 1/3 interest and 1/3 penalties. Payroll taxes, including the employer's share of payroll taxes, will be deducted from the wage portion of this payment.

*Mata, et al. v. Manpower, Inc./California Peninsula, et al.*
Case No.: 5:14-cv-03787-LHK

Declaration of Charles Swanston in Support of
Plaintiffs' Motion for Preliminary Approval of
the Class Action Settlement

14. <u>Manner of Distribution of the Net Settlement Amount and each Class Member's</u> <u>Estimated Amount:</u> Each class member who submits a valid and timely Opt-Out Form will waive of any right to obtain a share of the Net Settlement Amount and will not be bound by the Settlement or any order or judgement entered by the Court approving the Settlement. Any class member who does not exclude themselves from the Settlement will receive a Settlement payment and will be bound by this Settlement and any order or judgment entered by the Court approving the Settlement. Each class member will receive a Notice of Settlement stating their estimated individual settlement payment which will be subject to an upward increase depending on the number of class members who opt-out of the Settlement. Each class Member's payment will be calculated using a two-part formula. The first part is simple, as it consists of a base payment of $12.50, which amounts to one hour of wages at the average hourly rate paid to the Class Members during the Class Period. The second component is the Class Member's pro rata share of the balance of the Net Settlement Fund, calculated according to the number of wage statements each Class Member received during the Class Periods. (Settlement, ¶ 24.) The value assigned to each wage statement is expected to be .9649. The average payout per class member is expected to be $30.90. The amount paid out to a six month employee is expected to be $37.59. The amount paid out to a four year employee is expected to be $213.20.

15. As with most off-the-clock cases, documentation does not exist for a number of tasks which are the subject of this lawsuit. The parties have elected to use a hybrid pay formula that includes a fixed component, which compensates each Class member for tasks which most Class Members are expected to have completed, regardless of their length of service, and a component that incorporates a pro-rata payment based upon time of service, as reflected by the number of wage statements each Class Member received. This formula is intended to compensate Class Members who spent a greater amount of time in Defendants' employ with a higher payout, as employees who worked more faced a greater likelihood of encountering certain unpaid tasks and a higher frequency of violations. In other words, the longer a worker was employed, the more assignments he or she would have received and completed, encountering more off-the-clock tasks associated with each assignment. The propriety of a pro rata formula in off-the-clock cases is well-established. See, e.g.

*Mata, et al. v. Manpower, Inc./California Peninsula, et al.*
Case No.: 5:14-cv-03787-LHK

Declaration of Charles Swanston in Support of
Plaintiffs' Motion for Preliminary Approval of
the Class Action Settlement

*Deaver v. Compass Bank*, 2015 U.S. Dist. LEXIS 166484 (N.D. Cal. 2015); *Wren v. RGIS Inventory Specialists*, 2011 U.S. Dist. LEXIS 38667 (N.D. Cal. 2011). The parties believe this formula will fairly and properly compensate the class members for their unpaid wage and wage statement claims. The compensation formula is the best method for ensuring that class members who worked throughout the entire Class Period receive the highest compensation. The formula will ensure that class members are compensated based on their length of employment during the Class Periods, and the Declaration of Claudia Padilla demonstrates that number of Class Members' violations is indeed commensurate with the length of employment. Application of this formula is consistent with the Declaration of Ms. Padilla and factual investigation of counsel.

16. The $12.50 base payment is equal to 100% of the average wage paid to Manpower employees for one hour of work during the Class Period. Based on Plaintiffs' factual investigation and evidence disclosed in discovery, the average time to view a Manpower orientation video (30 minutes), attend a client and interview (30-45 minutes), and complete post-termination activities (15 minutes) totaled approximately 90 minutes. The base payment of $12.50 represents a fair compromise of the claims arising from unpaid onboarding tasks, as it comprises approximately 63% of the wage that would have been paid to the class members at the average hourly rate for the Manpower Orientation, client interviews/orientations, and post assignment reporting. Since Manpower and the Class Members did not agree to a specific wage rate for time prior to and subsequent to assignments, payment of the average wage rate instead of the minimum wage rate makes this formula generous and this component of the settlement reasonable. For the purposes of settlement, Plaintiffs heavily discounted the MDT training time for several reasons. Defendants produced evidence that completion of MDT training was not mandatory, no records of such training were kept or maintained, because the software was based upon a familiar program employees were able to operate the MDT software without training, and, finally, the estimated time to review the online tutorial was less than 10 minutes. Given the uncertainty of the outcome of a trial on the merits with respect to such claims, not to mention the risk of denial of certification, this compromise is clearly justified.

///

8

*Mata, et al. v. Manpower, Inc./California Peninsula, et al.*
Case No.: 5:14-cv-03787-LHK

Declaration of Charles Swanston in Support of
Plaintiffs' Motion for Preliminary Approval of
the Class Action Settlement

17.     The settlement is fair and provides adequate compensation to the class members. The manner in which the settlement is structured assumes that each class member underwent a single Manpower Orientation. The basic nature of the orientation remained the same regardless of whether the orientation was provided online through "RedCarpet" or "Silk Road" or in-person, though details of the presentation might differ. According to time studies conducted by Manpower, the entire onboarding process, the final component of which was the Manpower Orientation, which is the term used to refer to the presentation during which newly-hired Manpower associates are walked through Manpower's policies, procedures, rules and requirements, took an average of 60 minutes prior to the institution of RedCarpet. After RedCarpet was introduced, this time was reduced to 45 minutes for those using RedCarpet. Based upon the review of documentary evidence disclosed during discovery, discussions with the class representatives, and discussions with staffing specialists, counsel determined that the Manpower Orientation typically lasted 20 to 30 minutes. Since the average wage for Manpower employees during the Class Period is $12.50 per hour, a payment of $12.50 suffices to compensate class members for undergoing a Manpower Orientation, the various tasks associated with onboarding, and post termination reporting of current authority without payment of wages.

18.     The pro rata component of the payment formula is intended to compensate class members based upon the amount of time each class member spent in Defendants' employ. This aspect of the settlement has been modeled upon the compensation structure typically applied to off-the-clock claims, which is appropriate for this case given that this case seeks recovery for off-the-clock tasks performed by the class members, much of which was not documented. By compensating the class members on a pay period basis, the settlement pays more money to class members who worked more pay periods for the Defendants and who, therefore, were more likely to encounter unpaid tasks, such as client interviews, client orientations, and in-assignment consultations with Manpower staff, and likely encountered a greater number of these types of unpaid tasks than those who worked fewer pay periods.

19.     The settlement amount is fair whether viewed from the perspective of the average payout per class member or the value per pay period. A short time employee who worked for

*Mata, et al. v. Manpower, Inc./California Peninsula, et al.*
Case No.: 5:14-cv-03787-LHK

Declaration of Charles Swanston in Support of
Plaintiffs' Motion for Preliminary Approval of
the Class Action Settlement

Manpower for one month is expected to be paid $16.36, consisting of the base payment of $12.50 and the pay period payment of $3.86. The pay period payment is small, but so is the likelihood that this worker encountered a large volume of unpaid tasks. Assuming that this employee was engaged in two hours of compensable time between onboarding tasks, the Manpower Orientation, a client interview, a client orientation and post-assignment communications and reports, the average employee is being compensated for 65% of that time.

20.    An employee who worked for Manpower for two years, on the other hand, would receive a base pay of $12.50 and a pay period value of $100.35. This will provide total pay of $112.85, which would compensate this worker for the same initial onboarding, interview and orientation tasks, but would also compensate this worker for a greater number of consultations and reports during the course of his or her assignments, a greater number of post-assignment interactions with Manpower's staff and a greater number of wage statements.

21.    A very small amount has been attributed to penalties in this case. Defendants contend that they will not be liable for waiting time penalties because they held a good faith belief that the tasks involved in this case were not compensable, particularly under the unique circumstances applicable to staffing agencies. Consequently, Defendants contend that they have a good faith defense to the wage claims alleged in this case so that even if the class were to prevail on some of the wage claims, Defendants would escape liability for waiting time penalties. See 8 Cal. Code Regs. § 13520 (no liability for waiting time penalties where the employer had a good faith belief that the wage was not owed).)

22.    Likewise, the wage statement violations alleged in this case are derivative of the wage claims, in that Defendants will be liable for wage statement penalties only if they are liable for unpaid wages. Consequently, an outcome in favor of defendants on the wage claims will automatically result in an outcome in favor of defendants on the wage statement claims. Moreover, Defendants contend that even if Plaintiffs prevail on the wage claims, the wage statement penalty analysis would be different for defendants than for other employers because defendants were, for some purposes, providing services to the class members, and exposure to penalties for wage statement violations arising from unpaid pre-assignment and post-assignment wages is contrary to

*Mata, et al. v. Manpower, Inc./California Peninsula, et al.*
Case No.: 5:14-cv-03787-LHK

Declaration of Charles Swanston in Support of
Plaintiffs' Motion for Preliminary Approval of
the Class Action Settlement

the intent of Labor Code section 226 and would escape the presumption of harm codified in Labor Code section 226 for the purposes of section 226(e) penalties.

23. Consequently, the parties have valued all penalties as one-third of the total Net Settlement Amount, and this valuation is fair and reasonable, given the risks avoided by the settlement. Therefore, the estimate that the $12.50 fixed component of the settlement payment is sufficient to compensate class members for 63% of the wages to which they were entitled for completing a Manpower Orientation, client interview/orientation and post-termination tasks, as identified in paragraph 16 above must be reduced by 1/3 to take into account the portion that represents penalties. Once this is done, the fixed component of the settlement payment compensates class members for 42% of the total wage to which they claim to have been entitled for such tasks. However, this amount is still reasonable and should be approved. Likewise, the amount of total compensation for all unpaid tasks referenced in paragraph 19 is reduced from 65% to 43% after penalties are taken into account, which is still reasonable and should be approved.

24. <u>Scope of Release</u>: The operative complaint in this matter alleges nine causes of action against Manpower, Inc./California Peninsula, ManpowerGroup, Inc., Manpower Inc. and ManpowerGroup US Inc. ("Released Parties"). The Released Parties does not include Manpower US Inc. and/or any Manpower franchise. The Settlement provides that class members who do not opt-out of the Settlement will be releasing the Release Parties as to all claims arising out the allegations in Plaintiffs' SAC based on any of the facts, events, statements, omissions or failures to act as alleged in Plaintiffs' SAC ("Released Claims"). The Released Claims do not include any claim by any person based upon work performed and/or violations of law occurring while such person was in the employ of either Manpower US Inc. and/or any Manpower franchise. (Settlement, ¶¶ 39, 40) Class members who do not opt-out will also be releasing all known and unknown claims against the Release Parties pursuant to California Civil Code § 1542 that arise out of the facts, circumstances, and causes of action alleged in the operative complaint. (Settlement, ¶ 41.)

25. <u>Risk of Maintaining Class Certification through Trial and the Likelihood of Success on the Merits</u>. We weighed the risks associated with prolonged litigation and the likelihood of success on the merits and the risk of non-certification. Although Plaintiffs' counsel are confident

*Mata, et al. v. Manpower, Inc./California Peninsula, et al.*
Case No.: 5:14-cv-03787-LHK

Declaration of Charles Swanston in Support of
Plaintiffs' Motion for Preliminary Approval of
the Class Action Settlement

that class certification is appropriate in this case, we certainly consider the risk of denial of certification. During the pendency of the action and through today, Defendants denied and continue to deny the allegations against them. Defendants argue that employees did not work off-the-clock resulting in unpaid wages and that at all times they complied with all wage statement requirements. Defendants believed and continue to believe that they do not owe any wages or damages to Plaintiffs or any class member as Manpower was not required to pay them for the tasks related to the search of gainful employment as these individuals were not yet Manpower employees. Even so, Manpower claims it paid associates for other "off the clock" claims relating to client orientations and training though such payments were not properly coded[4]. The issues and defenses that Defendants raised were investigated and evaluated. When taken as a whole, the benefits afforded to Plaintiffs and the class members by entering into the Settlement outweighed the risks. Plaintiffs' counsel discounted the class claims in view of the risks presented. The Settlement provides a certain recovery for the class members and the risk of non-certification is eliminated. Likewise, the parties recognize that the issues presented in this lawsuit are likely to be resolved only with further extensive and costly pretrial and trial proceedings, and further litigation will only increase costs and cause the delay of a potentially lower recovery. The factors affecting the settlement determination with regard to the unpaid wage claim and the claims for derivative penalties is discussed below

26. <u>Unpaid Wages:</u> The unpaid wage claim results from the employer's practice of requiring class members to perform work for which they were not paid, consisting of tasks performed before, during and after being assigned to Defendants' clients. Defendants' have viable defenses to Plaintiffs' unpaid wage claim. Defendants believe that they do not owe any wages and that Manpower was not required to pay for the tasks it characterizes as assisting class members in their search for gainful employment. We also took into consideration Manpower's argument that that an individualized inquiry was necessary to determine the amount of time expended on each task; whether some class members were paid for some of the tasks; the tasks completed and their frequency; and which particular tasks were mandatory. Defendants contended that even if they were liable for unpaid wages, Plaintiffs' analysis exaggerated the amount of unpaid wages by failing to

---

[4] For example, see paragraphs 6-10 of the Horne Declaration filed as Docket No. 163-1.

*Mata, et al. v. Manpower, Inc./California Peninsula, et al.*
Case No.: 5:14-cv-03787-LHK

Declaration of Charles Swanston in Support of
Plaintiffs' Motion for Preliminary Approval of
the Class Action Settlement

take into account the fact that not all temporary service employees were required to perform the same tasks, many were performed on the clock, and many of the tasks were subject to a *de minimis* defense because they took a minimal amount of time to complete. Moreover, the reporting time claim is vulnerable to the argument that the orientations and other tasks which are the subject of the reporting time claim did not involve Class members reporting for half of their scheduled day's work, as these tasks were scheduled for brief periods of time and involvement in these tasks always took more than half the scheduled time. With regard to online tasks, Defendants' contend that the Class Members, not the defendants, were responsible for the amount of time involved in the performance of tasks, and in those instances reporting time pay should not be awarded. These issues forced us to reevaluate our damage analysis and significantly discount the unpaid wage claim. For settlement purposes, this impacted Plaintiffs' estimated settlement value.

27. <u>Wage Statements</u>: Up until January 2012, Defendants' wage statements failed to correctly identify the employer, failed to record the employer's address and failed to specify the beginning and end dates for pay periods as required by the California Labor Code. The strength of Plaintiffs' wage statement claim also arise from Defendants' mandatory requirement that Plaintiffs and the class members complete a significant amount of orientation processes as well as continue to perform numerous job related tasks and activities without payment of wages, including reporting time pay for occasions when these tasks constituted less than half their scheduled or usual day's work, or for occasions when such tasks required them to report for work a second time in a single day. Because neither the time involved in these tasks nor any reference to wages for such time were included in their wage statements. This court is aware that plaintiffs' counsel vigorously attempted to expand the class period applicable to wage statement claims in order to bring the same technical deficiencies that were litigated in the *Willner* case within the scope of this case. In fact, this court chastised counsel in its order granting Defendants' motion to strike portions of Plaintiffs' Second Amended Complaint for what the court viewed as an excessive number of attempts to do so. Without those technical violations, the class members could assert only isolated technical violations and derivative claims for which factual disputes existed as to whether the deficiencies were knowing and intentional and whether Plaintiffs and the class members suffered an injury as the result of the

Mata, et al. v. Manpower, Inc./California Peninsula, et al.
Case No.: 5:14-cv-03787-LHK

Declaration of Charles Swanston in Support of
Plaintiffs' Motion for Preliminary Approval of
the Class Action Settlement

technical deficiencies. Defendant argues that the technical wage statement violations do not constitute a statutory violation and did not result in an injury to the Class. Defendants' argument against a finding that any errors in Defendants' wage statements were knowing and intentional for the purposes of California Labor Code § 226(e) are similar to Defendants' argument against the imposition of waiting time penalties. Likewise, Plaintiffs' grappled with the injury aspect of section 226, particularly whether harm could be prevented and whether an individualized inquiry would be necessary. Without penalties under section 226(e), class members would be eligible only for PAGA penalties for any violations of California Labor Code § 226. In light of the defenses raised by Defendants, we believe that Plaintiffs' wage statement claims are vulnerable and discounted the settlement value of such claims accordingly. After multiple rulings of this court, it became clear that it would be difficult to prove that Defendants' violations regarding wage statements unpaid wages were willful, knowing and intentional and that injury was sustained as a result of the violations.

28. Plaintiffs' counsel acknowledges that a 100% violation rate is not realistic. It is probable that many, if not most employees in the putative Class, did not suffer the maximum amount of violations alleged. After the first mediation we determined that we would have to reevaluate the class claims, ultimately concluding after further analysis of the documents and data available to us that we would need to significantly discount the class claims (including penalties which are dependent on those claims) in order to arrive at the settlement for which preliminary approval is now requested.

29. We ultimately weighed the strengths and weaknesses of Plaintiffs' claims as outlined above and recognized that each of Defendants' arguments had the possibility of defeating Plaintiffs' claims on the merits and/or at certification. In sum, we believe that the information we had was more than enough to adequately asses the strengths and weaknesses of the class claims. Plaintiffs recognize the expense, length and uncertainty and risk of continued proceedings necessary to continue the litigation against Defendants, including the likelihood of achieving class certification, trial and any possible appeals. The Settlement confers a substantial benefit to the Class Members, a settlement of $2,900,000.00 is fair, adequate and reasonable.

///

*Mata, et al. v. Manpower, Inc./California Peninsula, et al.*  
Case No.: 5:14-cv-03787-LHK

Declaration of Charles Swanston in Support of  
Plaintiffs' Motion for Preliminary Approval of  
the Class Action Settlement

## IV. CERTIFICATION OF CLASS FOR SETTLEMENT

30. Based on our investigation and evaluation of the information and documents we have reviewed, I believe that the requirements for certification of the settlement class in this case have been met.

31. <u>Ascertainable and Numerous</u>: Based on Defendants' review of their records, it is estimated that there are approximately 58,500 current and former employees (collectively "Class Members") in the settlement Class defined as follows:

> All current and former non-exempt, hourly associates who worked for Defendant Manpower, Inc./California Peninsula from April 12, 2009 through Preliminary Approval and all current and former non-exempt, hourly associates who worked for Defendants Manpower Inc., ManpowerGroup Inc., and ManpowerGroup US Inc. from February 13, 2009 through Preliminary Approval. Notwithstanding the foregoing, any person who performed work and/or suffered violations of any law occurring while such person was in the employ of either Manpower US Inc. and/or any Manpower franchise is not a "Class Member". (Settlement, ¶ 7.)

32. The Class is sufficiently numerous and the identities of the Class Members are readily ascertainable by inspecting Defendants' employment and payroll records.

33. <u>Commonality</u>: This litigation involves questions of law and fact that are common to each putative Class Member and predominate over any individual issues. These common questions of law and fact arise out of Defendants' alleged failure to: (1) pay all hours worked; (2) pay minimum wages; (3) pay reporting time pay; (4) provide complete and accurate wage statements; and (5) timely pay all wages upon separation of employment.

34. <u>Typicality</u>: Plaintiffs Claudia Padilla and Lesli Guido sustained injuries and damages arising out of and caused by Defendants' alleged common course of conduct as alleged in Plaintiffs' SAC as set forth herein. Plaintiffs allege that they did not receive wages for certain mandatory tasks that Plaintiffs and the putative class had to complete before, during and after being assigned to Defendants' clients; and as a result incomplete and inaccurate wage statements were provided to them that failed to report all hours worked for these mandatory tasks and the wage statements failed to identify the legal name of the employer, the address and the relevant pay period.

///

*Mata, et al. v. Manpower, Inc./California Peninsula, et al.*
Case No.: 5:14-cv-03787-LHK

Declaration of Charles Swanston in Support of
Plaintiffs' Motion for Preliminary Approval of
the Class Action Settlement

35.     Adequacy of Representation:

a.) Class Representatives: Plaintiffs Claudia Padilla and Lesli Guido are suitable representatives in that they have fairly and adequately represented the interests of the Class Members and have put the interests of the class before their own.   Plaintiffs have spent a considerable amount of time helping to investigate the facts of this case.   They have actively participated in the lawsuit by attending numerous in-person meetings and telephonic conferences with me, attorneys and staff from my office; regularly providing information and documents to my office; regularly reviewing documents associated with this lawsuit; preparing several declarations; preparing for and attending their depositions; and otherwise kept apprised of the case developments. Plaintiffs recognized and accepted that any resolution of this lawsuit, by dismissal or settlement, is subject to Court approval and must be in the best interest of the Class as a whole.  As a direct result of their efforts the Class Members now stand to benefit from the Settlement.   (Decl. Padilla, ¶ 15; Decl. Guido, ¶ 8.)

b.) Class Counsel: Plaintiffs' Counsel have diligently litigated this case and has adequately and zealously represented the Class Members in this action. I have been practicing in Monterey, San Benito, Santa Clara, and Santa Cruz counties for over 20 years.   The primary emphasis of my practice is employment litigation.   I have represented both employers and employees.  Approximately 13 years ago my office commenced handling plaintiff class action wage and hour cases.  Since then my office has handled hundreds of wage and hour cases to conclusion and have been class counsel and/or co-counsel in over 70 class actions.  Currently, we have multiple ongoing wage and hour class actions in Monterey County Superior Court, Santa Clara Superior Court, San Benito Superior Court, Santa Cruz Superior Court and the United States District Court, Northern District of California, where we will seek class certification by way of a settlement or a class certification motion.

More specifically, we have served as counsel in the following class actions (not an exhaustive list): *Arce v. Vintage Senior Management, Inc.*, Monterey County Superior Court, Case No. M102563; *Areyano v. Tacaza, Inc.*, Fresno County Superior Court, Case No. 10CECG03994; *Barbosa v. Kelly Services, Inc.*, United States District Court, Northern District of California, Case

*Mata, et al. v. Manpower, Inc./California Peninsula, et al.*
Case No.: 5:14-cv-03787-LHK

Declaration of Charles Swanston in Support of
Plaintiffs' Motion for Preliminary Approval of
the Class Action Settlement

No. 15-CV-06022-HRL; *Barrios v. Christopher Ranch*, LLC, Santa Clara County Superior Court, Case No. 112CV233772; *Bautista v. Carmel Valley Manor*, Monterey County Superior Court, Case No. M122739; *Bernal v. Davita, Inc.*, United States District Court, Northern District of California, Case No. 12-CV-03255-LHK; *Bueno v. Little Caesars of Santa Cruz, Inc.*, Monterey County Superior Court, Case No. M117267; *Canseco v. Full Steam Staffing, LLC*, Monterey County Superior Court, Case No. M129251; *Castillo v. Elyxir Distributing, LLC*, Santa Cruz County Superior Court, Case No. CV177119; *Castro v. Emeritus*, Monterey County Superior Court, Case No. M118861; *Ceja v. Taylor Farms Retail, Inc.*, Monterey County Superior Court, Case No. M116475; *Chico v. Mi Pueblo*, Monterey County Superior Court, Case No. M114983; *Clavijo v. Manpower, Inc./California Peninsula*, Monterey County Superior Court, Case No. M126646; *Chavez v. Oceano Packing Company, LLC*, Monterey County Superior Court, Case No. 15CV000018; *Coyt v. Nelson Staffing Solutions dba Nelson Staffing*, San Benito County Superior Court, Case No. CU-14-00130; *Cruz v. Gianna's Inc.*, Monterey County Superior Court, Case No. M115703; *De La Torre v. National Security Guard*, Monterey County Superior Court, Case No. M122792; *Deras v. Merchants Building Maintenance Company*, Monterey County Superior Court, Case No. M112362; *Escalante v. Mi Pueblo San Jose, Inc.*, Santa Cruz County Superior Court, Case No. CV170586; *Esparza v. Pandori Electronics USA, Inc.*, Monterey County Superior Court, Case No. M117241; *Estrada v. Salyer American*, United States District Court, Northern District of California, Case No. 09-CV-05618 LHK; *Fernandez v. Driscoll Strawberry Associates, Inc.*, Monterey County Superior Court, Case No. M124551; *Flores v. Full Steam Staffing LLC*, Monterey County Superior Court, Case No. M129277; *Flores v. GreenGate Fresh LLLP*, Monterey County Superior Court, Case No. M114982; *Flores v. Jesse and Evan, Inc.*, Monterey County Superior Court, Case No. M128382; *Garcia v. Monterey Signature Hotels*, LLC, Monterey County Superior Court, Case No. M123573; *Guerrero v. Chualar Harvesting, Inc.*, Monterey County Superior Court, Case No. M129075; *Goodwin v. Cowles California Media Company*, Monterey County Superior Court, Case No. M117831; *Hernandez v. Archon Hospitality*, Monterey County Superior Court, Case No. M100610; *Hernandez v. Clinica de Salud del Valle de Salinas*, Monterey County Superior Court, Case No. M118707; *Isquierdo v. W.G. Hall, LLC dba @Work Personnel Services*, Inc.,

*Mata, et al. v. Manpower, Inc./California Peninsula, et al.*
Case No.: 5:14-cv-03787-LHK

Declaration of Charles Swanston in Support of
Plaintiffs' Motion for Preliminary Approval of
the Class Action Settlement

United States District Court, Northern District of California, Case No. 5:15-cv-00335 BLF; *Jimenez v. Ameri-Kleen*, Monterey County Superior Court, Case No. M114430; *Juarez v. Malta Enterprises dba Laurel Inn Motel*, Monterey County Superior Court, Case No. M129346; *LeFurge v. Tacaza, Inc.*, Fresno County Superior Court Case No. 10 CE CG 04433; *Lopez v. Nutricion Fundamental, Inc.*, Monterey County Superior Court, Case No. M112351; *Lopez v. Progress Financial*, Monterey County Superior Court, Case No. M115703; *Lopez v. Satellite Healthcare, Inc.*, Santa Cruz County Superior Court, Case No. CV169725; *Lopez v. Springfield Farms*, Monterey County Superior Court, Case No. M122067; *Martinez v. Harmony Foods Corporation dba Santa Cruz Nutrinals*, Santa Cruz County Superior Court, Case No. CV177053; *Mendez v. Earthbound Farms Holding I, LLC*, San Benito County Superior Court, Case No. CU-13-00011; *Michel v. La Princesa Market #14, Inc.*, Santa Cruz County Superior Court, Case No. CV175999; *Montejano v. Fox Factory Inc.*, Santa Cruz County Superior Court, Case No. CV175560; *Montoya v. Full Steam Staffing LLC*, Monterey County Superior Court, Case No. 128639; *Mora v. Robert Mann Packaging, Inc.*, Monterey County Superior Court, Case No. M125128; *Ochoa v. The Complete Logistics Company*, Santa Clara County Superior Court, Case No. 111CV200180; *Ortiz v. Gurries Property Management, Inc.*, Monterey County Superior Court, Case No. M121091; *Pantoja v. National Custom Packing, Inc.*, Monterey County Superior Court, Case No. M125340; *Pantoja v, RAMCO Enterprises, L.P.*, Monterey County Superior Court, Case No. M126835; *Polanco v. Salinas Valley Imaging, LLC*, Monterey County Superior Court, Case No. 15CV000800; *Quezada v. Sonora Packing Company, Inc.*, Monterey County Superior Court, Case No. M123892; *Ramirez v. Manpower, Inc.*, United States District Court, Northern District of California, Case No. C-13-02880 EJD; *Ramirez v. Manpower, Inc./California Peninsula*, United States District Court, Northern District of California, Case No. C-13-03238 EJD; *Reyna v. Diageo Chateau & Estate Wines Company, Inc. dba Chalone Vineyards*, Monterey County Superior Court, Case No. M131771; *Rico v. Full Steam Staffing LLC*, Monterey County Superior Court, Case No. M129278; *Rico v. Manpower, Inc./California Peninsula*, Monterey County Superior Court, Case No. M129042; *Rico v. T.W.D.C. Industries Corp. dba Vision Recycling*, Monterey County Superior Court, Case No. M132307; *Rivera v. Laser Devices, Inc.*, Monterey County Superior Court, Case No. M116176; *Robledo v. Randstad US, L.P.*,

*Mata, et al. v. Manpower, Inc./California Peninsula, et al.*
Case No.: 5:14-cv-03787-LHK

Declaration of Charles Swanston in Support of
Plaintiffs' Motion for Preliminary Approval of
the Class Action Settlement

Monterey County Superior Court, Case No. M130588; *Rodriguez v. Westmont Living, Inc.*, Santa Clara County Superior Court, Case No. 115CV279290; *Romero v. Custom House Hotel, L.P. dba Portola Hotel & Spa*, Monterey County Superior Court, Case No. M128440; *Romero v. Noble House Monterey, LLC dba Monterey Beach Resort*, Monterey County Superior Court, Case No. M132275; *Rosales v. Santa Fe Mercados, Inc.,* Santa Cruz County Superior Court, Case No. CV166615; *Ruiz v. Monterey Mushrooms, Inc.,* Monterey County Superior Court, Case No. 15CV000023; *Salgado v. River Ranch Fresh Foods, LLC*, Monterey County Superior Court, Case No. M115475; *Sanchez v. Keurig Green Mountain, Inc.*, United States District Court, Northern District of California, Case No. 15-cv-04657-EJD; *Santos v. Blackburn Farming Co., Inc.*, San Benito County Superior Court, Case No. CU-15-00012; *Silva v. Foothill Packing, Inc.*, Monterey County Superior Court, Case No. M127426; *Talavera v. Full Steam Staffing*, LLC Santa Clara County Superior, Court Case No. 114CV267357; *Valadez v. Jal Berry Farms, LLC*, Monterey County Superior Court, Case No. M127425; *Valdez v. Max Hoseit Management Company*, Monterey County Superior Court, Case No. M127656; *Vargas v. Vasvision Berry Farms, LLC*, Monterey County Superior Court, Case No. M126647; *Vega v. Elkhorn Packing, Co., LLC* , Monterey County Superior Court, Case No. M121202; *Weinmann v. Balance Staffing*, Santa Cruz County Superior Court, Case No. CV180848; and *Weinmann v. Infinity Staffing*, San Benito County Superior Court, Case No. CU-15-00007.

36.    My firm takes cases on a contingency fee basis.   We have not received any compensation for our time or expenses invested in this case.  We have prosecuted this litigation for over two years, taking a risk that we might ultimately receive no compensation for our work.  As of the date of this declaration, we have advanced costs totaling approximately $68,000.00.

37.    <u>Superiority and Public Policy:</u> The nature of the action makes the use of class treatment superior to individual litigation.  This class action has achieved economies of time, effort and expense as compared to 58,500 potential separate individual lawsuits. Individualized litigation would not be practicable as the recovery of any individual damages would be relatively low and the costs of litigating single claims would exceed the benefit to any one individual.  Prosecuting separate actions would create a risk that Defendants would not be persuaded to change their policies and

*Mata, et al. v. Manpower, Inc./California Peninsula, et al.*
Case No.: 5:14-cv-03787-LHK

Declaration of Charles Swanston in Support of
Plaintiffs' Motion for Preliminary Approval of
the Class Action Settlement

procedures.  Moreover, current employees are often intimidated and afraid to assert their rights out of fear that they will be subjected to direct or indirect retaliation by their employers. Former employees are often fearful of brining a lawsuit against their former employers because they believe any future employment endeavors will be jeopardized.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct and if called as a witness I could and would competently testify to each of the matters stated herein, and I state that these matters are based upon my own personal knowledge acquired through first-hand observation, except where stated otherwise.

This declaration was executed on June 9, 2016, in Salinas, California.

*/s/ Charles Swanston*
Charles Swanston

*Mata, et al. v. Manpower, Inc./California Peninsula, et al.*
Case No.: 5:14-cv-03787-LHK

Declaration of Charles Swanston in Support of
Plaintiffs' Motion for Preliminary Approval of
the Class Action Settlement

EXHIBIT "A"

B. James Fitzpatrick CA Bar No. 129056
bfitzpatrick@fandslegal.com
Charles Swanston CA Bar No. 181882
cswanston@fandslegal.com
FITZPATRICK, SPINI & SWANSTON
555 S. Main Street
Salinas, CA 93901
Telephone:    831.755.1311
Facsimile:    831.755.1319

Attorneys for Plaintiffs

Spencer C. Skeen CA Bar No. 182216
spencer.skeen@ogletreedeakins.com
Tim L. Johnson CA Bar No. 265794
tim.johnson@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
4370 La Jolla Village Drive, Suite 990
San Diego, CA 92122
Telephone:    858.652.3100
Facsimile:    858.652.3101

Attorneys for Defendants

Patrick D. Toole CA Bar No. 190118
ptoole@wjhattorneys.com
WANGER JONES HELSLEY PC
265 E. River Park Circle, Suite 310
Fresno, CA 93720
Telephone:    559.233.4800
Facsimile:    559.233.9330

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUVENTINA MATA, CLAUDIA PADILLA AND LESLI GUIDO on behalf of themselves and all others similarly aggrieved employees, <br><br> Plaintiffs, <br><br> v. <br><br> MANPOWER, INC./CALIFORNIA PENINSULA; MANPOWER US INC.; MANPOWER, INC.; MANPOWERGROUP PUBLIC SECTOR INC; MANPOWERGROUP US INC.; and DOES 1 THROUGH 100, INCLUSIVE, <br><br> Defendants. | Case No. 5:14-cv-03787-LHK <br><br> **JOINT STIPULATION OF CLASS ACTION SETTLEMENT** <br><br> Removal Filed:    August 20, 2014 <br> Trial Date:         March 20, 2017 <br> Judge:             Hon. Lucy H. Koh |

This Joint Stipulation for Class Action Settlement ("Joint Stipulation") is made and entered into by and between Plaintiffs Claudia Padilla and Lesli Guido ("Plaintiffs"), on behalf of themselves and on behalf of others similarly situated, and Defendants Manpower Inc., ManpowerGroup Inc., Manpower, Inc./California Peninsula, and ManpowerGroup US Inc. ("Defendants").

This Joint Stipulation shall be binding on Plaintiffs and the class they purport to represent, and Defendants and their subsidiaries, successors and assigns, and any individual or entity which could be jointly liable with Defendants, and their respective counsel, subject to the terms and conditions hereof and the approval of the Court.

**THE PARTIES STIPULATE AND AGREE** as follows:

1.      Plaintiffs and Defendants are collectively referred to as "the Parties."

2.      On May 10, 2016, the Parties participated in a second mediation with Mark Rudy, Esq.

3.      On May 30, 2016, the Parties entered into a Memorandum of Understanding ("MOU"), which is fully incorporated herein.

4.      Subject to preliminary and final approval by the United States District Court, Northern District of California, the Parties have reached an agreement to settle and resolve all claims, causes of actions, and primary rights asserted in in the lawsuit entitled *Mata, et al v. Manpower, Inc./California Peninsula, et al.,* United States District Court, Northern District of California, Case No. 5:14-cv-03787 LHK ("Action"), on the following terms.

5.      The Parties have conducted investigation of facts and law during the prosecution of the litigation. The investigation included the exchange of information pursuant to formal and/or informal discovery, multiple depositions, extensive motion work, numerous meetings and conferences between representatives of the Parties, and two mediations. Counsel for the Parties also have investigated the applicable law as applied to the facts discovered regarding the alleged claims of Plaintiffs and potential defenses thereto, and the damages claimed by Plaintiffs on behalf of themselves and the class they seeks to represent. Among other things, the discovery included information regarding the number of class members, timekeeping, and payroll data for the putative

class members for the entire class period and Defendants' policies and procedures with regard to wage statements, internal orientations, client orientations, Manpower Direct Time ("MDT") trainings, assessments and trainings, post-assignment reporting and consulting, post-termination reporting, client interviews, and background checks. The Parties each conducted their own evaluations as to the potential recoveries for putative class members due to the practices alleged in the Action and independently evaluated this information in light of the claims alleged.

6. Nothing contained in this Joint Stipulation, nor the fact of this Joint Stipulation itself, shall be construed or deemed as an admission of liability, culpability, negligence, or wrongdoing on the part of Defendants. Nothing herein shall constitute an admission by Defendants that the Action was properly brought as a class or representative action other than for settlement purposes. The settlement of the Action, the negotiation and execution of this Joint Stipulation, and all acts performed or documents executed pursuant to or in furtherance of this Joint Stipulation or the settlement: (i) are not, shall not be deemed to be, and may not be used as, an admission or evidence of any wrongdoing or liability on the part of Defendants or of the truth of any of the factual allegations in the operative complaint; (ii) are not, shall not be deemed to be, and may not be used as, an admission or evidence of any fault or omissions on the part of Defendants in any civil, criminal, or administrative proceeding in any court, administrative agency or other tribunal; and (iii) are not, shall not be deemed to be, and may not be used as, an admission or evidence of the appropriateness of these or similar claims for class certification or administration other than for purposes of administering this Joint Stipulation.

7. For purposes of this Joint Stipulation, the "Class Members" shall be defined as follows:

**All current and former non-exempt, hourly associates who worked for Defendant Manpower, Inc./California Peninsula from April 12, 2009 through Preliminary Approval and all current and former non-exempt, hourly associates who worked for Defendants Manpower Inc., ManpowerGroup Inc., and ManpowerGroup US Inc. from February 13, 2009 through Preliminary Approval.** Notwithstanding the foregoing, any person who performed work and/or suffered violations of any law occurring while such person was in the employ of either Manpower US Inc. and/or any Manpower franchise shall not be considered a Class Member with respect to such employment.

8.      At time of entering into the MOU, Defendants represented that there are approximately 58,500 Class Members. In the event the actual class size exceeds this amount by more than 10% at the time of Preliminary Approval, the gross settlement amount will increase by a proportionate percentage.

9.      The settlement described herein will resolve fully and finally all claims due or claimed to be due under state law by all Class Members that are asserted in the Action, and all claims listed in paragraph 39 below.

10.     Solely for purposes of settling the Action only, the Parties stipulate and agree that the requisites for establishing class certification with respect to the Class Members have been met and are met. More specifically, the Parties stipulate and agree that:

      A.      The Class Members are ascertainable and so numerous as to make it impracticable to join all Class Members;

      B.      There are common questions of law and fact;

      C.      Plaintiffs believe their claims are typical of the claims of the Class Members;

      D.      Plaintiffs and Class Counsel will fairly and adequately protect the interests of the Class Members;

      E.      The prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct; and

      F.      With respect to the Class Members, Plaintiffs believe questions of law and fact common to the Class Members predominate over any individual questions, and that a class action is superior to other available means for the fair and efficient adjudication of the controversy.

11.     Defendants deny any liability or wrongdoing of any kind whatsoever associated with the claims alleged in the Action. Defendants further deny that, for any purpose other than settling the Action, these claims are appropriate for class or representative treatment. Plaintiffs, on the other hand, believe they have filed a meritorious action and that class certification is appropriate. Plaintiffs contend Defendants violated California's wage and hour laws with respect to

3

their policies and procedures regarding wage statements, internal orientations, client orientations, MDT trainings, assessments and trainings, post-assignment reporting and consulting, post-termination reporting, client interviews, and background checks. Plaintiffs also believe the Action is appropriate for class certification, as the requisites for class certification can be satisfied.

12.     Defendants deny that they have engaged in any unlawful activity, have failed to comply with the law in any respect, or have any liability to anyone under the claims asserted in the Action. The Parties expressly acknowledge that this Joint Stipulation is entered into for the purpose of compromise of highly disputed claims and that nothing herein is an admission of liability or wrongdoing by Defendants. Whether or not the settlement becomes final, neither the settlement, nor any document, statement, proceeding or conduct related to the settlement or this Joint Stipulation, nor any reports or accounting thereof, shall be construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to Defendants, including, but not limited to, evidence of a presumption, concession, indication or admission by Defendants of any liability, fault, wrongdoing, omission, concession or damage; or, disclosed, referred to or offered in evidence against Defendants, in any further proceeding in the Action, or any other civil, criminal, or administrative action or proceeding except for purposes of effectuating the settlement pursuant to this Joint Stipulation. This section and all other provisions of this Joint Stipulation notwithstanding, any and all provisions of this Joint Stipulation may be admitted in evidence and otherwise used in any and all proceedings to enforce any or all terms of this Joint Stipulation or in defense of any claims released or barred by this Joint Stipulation.

13.     The Parties hereby agree that the formula for allocating the settlement payments, as defined in paragraph 24, to the Class Members described below is reasonable and that the payments provided are designed to provide a fair settlement to the Class Members. Based on their own independent investigations and evaluations, Defendants and Plaintiffs and their respective counsel are of the opinion that the settlement for the consideration and on the terms set forth in this Joint Stipulation are fair, reasonable, and adequate, and is in the best interests of the Class Members and Defendants in light of all known facts and circumstances and the risks inherent in litigation, including the potential appellate issues. Class Counsel believe that the settlement amount

entered into is in the best interests of the Class Members and that the settlement for the Class Members is fair, reasonable, and adequate, especially given the inherent risk of litigation.

14. Plaintiffs, Class Counsel, Defendants and Defendants' counsel, agree to the conditional certification of the Class Members for the sole purpose of effectuating this settlement. Should the settlement not become final, for whatever reason, the fact that the Parties were willing to stipulate to class certification as part of the settlement shall have no bearing on, and shall not be admissible in connection with, the issue of whether a class should be certified in a non-settlement context in the consolidated cases or any other legal proceeding in any jurisdiction. Defendants expressly reserve the right to oppose class certification in the Action should the settlement not become final.

15. The purpose of this Joint Stipulation is to settle and compromise all claims by Plaintiffs and the Class Members for (A) all claims due or claimed to be due under state law by the Class Members asserted in the operative complaint, and (B) all claims listed in paragraph 39, below.

16. The settlement embodied in this Joint Stipulation contemplates the (a) entry of an order approving certification of the Class Members; (b) entry of a final order approving settlement of the Action; (c) entry of judgment; (d) discharge of Defendants from liability for any and all claims relating to the Action; (e) release by the Plaintiffs and the Class Members of all claims arising out of Defendants' policies and procedures regarding wage statements, internal orientations, client orientations, MDT trainings, assessments and trainings, post-assignment reporting and consulting, post-termination reporting, client interviews, and background checks; and (f) with respect to the claims listed in paragraph 39 below.

17. It is the intention of the Parties that this Joint Stipulation shall constitute a full and complete settlement and release of all of Plaintiffs' and the Class Members' claims arising from or related to the allegations made in the Action against Defendant and other parties related to Defendants identified in paragraph 39 below.

18. The Parties will seek preliminary and final approval of this settlement as soon as possible. Class Counsel shall prepare all paperwork necessary to obtain preliminary and final approval. Defendants' counsel agree to cooperate in good faith to accomplish this objective.

19. The gross settlement amount is $2,900,000.00, all-inclusive. The gross settlement amount is the maximum amount Defendants can be required to pay under this settlement. Payments to Class Members, attorney fees and costs, claims administration fees, incentive awards to Plaintiffs, the employer portion of payroll taxes, and PAGA civil penalties shall be deducted from the gross settlement amount.

20. Defendants shall pay the gross settlement amount 30 calendar days after final approval of the settlement.

21. This settlement is a non-reversionary and non-claims made settlement.

**TERMS OF SETTLEMENT**

NOW THEREFORE, in consideration of the mutual covenants, promises, and agreements set forth herein, the Parties agree, subject to the Court's approval, as follows.

22. It is agreed by and among Plaintiffs and Defendants that any claims, damages, or causes of action arising out of the disputes which are the subject of the Action, and any claims of Plaintiffs listed in paragraph 39 below, be settled and compromised as between the Class Members and Defendants, subject to the terms and conditions set forth in this Joint Stipulation and the approval of the United States District Court, Northern District of California.

23. The settlement embodied in this Joint Stipulation shall become effective ("Effective Date") when all of the following events have occurred: (i) this Joint Stipulation has been executed by all Parties and by counsel for the Class Members and Defendants; (ii) the Court has given preliminary approval to the settlement; (iii) notice has been given to the Class Members, providing them with an opportunity to object to the terms of the settlement or opt out of the settlement; (iv) the Court has held a formal fairness hearing and entered a final order and judgment certifying the Class Members and finally approving this Joint Stipulation; and (v) in the event there are written objections filed prior to the formal fairness hearing which are not later withdrawn, the later of the following events: (a) when the period for filing any appeal, writ or other appellate proceeding

6

opposing the settlement has elapsed without any appeal, writ or other appellate proceeding having been filed; (b) any appeal, writ or other appellate proceeding opposing the settlement has been dismissed finally and conclusively with no right to pursue further remedies or relief; or (c) any appeal, writ or other appellate proceeding has upheld the Court's final order with no right to pursue further remedies or relief. In this regard, it is the intention of the Parties that the settlement shall not become effective until the Court's order approving the settlement is completely final, and there is no further recourse by an appellant or objector who seeks to contest the settlement.

24. <u>Settlement Payments to the Class Members</u>: After deducting from the gross settlement amount payments to Class Members, attorney fees and costs, claims administration fees, incentive awards to Plaintiffs, the employer portion of payroll taxes, and PAGA civil penalties, the remaining settlement funds will be divided proportionately among the Class Members who do not opt-out. Settlement Payments will be based on the following formula: Each participating Class Member will receive a base payment of $12.50 in addition to a pro-rata payment based on the number of wage statements received during the class periods at issue. The Class Members' gross settlement awards will be apportioned as follows: 33.33% as wages, 33.33% for interest, and 33.33% for penalties. The amounts paid as wages shall be subject to all tax withholdings customarily made from employee's wages and all other authorized and required withholdings and shall be reported by W-2 forms.

25. <u>Class Counsel Fees and Costs</u>: Defendants will not object to a claim for attorney fees up to 25% of the gross settlement amount but the Court shall approve the fees requested. Defendants will also not object to cost recovery requested by Class Counsel but the Court shall approve the costs requested. Attorney fees and costs will be taken from the gross settlement amount.

26. <u>Class Representative</u>: Defendants will not object to incentive awards to Plaintiffs for a total of $15,000, to be taken from the gross settlement amount.

27. <u>California's Private Attorneys General Act Civil Penalties</u>: The Parties will allocate $25,000 of the gross settlement amount to Plaintiffs' PAGA claim. Of that amount, 75% will be paid to the LWDA.

28.     The Claims Administrator shall cause the settlement payments to be mailed to the Class Members within 30 calendar days after the Court's final approval of the settlement if no objections by the Class Members have been filed, or within 60 days of the final approval order if an objection is made but no appeal is filed, or within 60 days of the date the judgment is final and no longer subject to appeal if an appeal is filed.

29.     The Class Members shall have 180 calendar days to cash their settlement checks. Checks allocated to Class Members who cannot be located during the notice process shall be cancelled by the Claims Administrator and promptly place the funds in a Reserve Fund to be used to pay amounts allocated to Class Members who cannot be located within the time provided, but who are later located up to six months after the Effective Date, and who are otherwise qualified for such payment. All payments made from the Reserve Fund shall be made as soon as practicable after the Class Members are located. Any funds remaining in the Reserve Fund after six months and any remaining funds from "uncashed checks" shall be distributed to the Interdisciplinary Center for Healthy Workplaces.

30.     The Claims Administrator shall provide written notice to Defendants no later than five calendar days after the opt-out filing deadline with a complete list of the Class Members who have effectively opted-out of the settlement and the number of total wage statements associated with each.

31.     The parties agree that if more than 10% of the Class Members opt out of the settlement, Defendants shall have the right to rescind the settlement if the Parties cannot agree on appropriate modifications to the settlement terms. Defendants must exercise this right of rescission in writing within seven calendar days after the Claims Administrator first notifies the parties that the class size has been exceeded by 10% or more. If Defendants rescind the settlement, they will be responsible for administration costs incurred at the time of rescission

**CLAIMS ADMINISTRATION**

32.     The Parties have agreed to the appointment of CPT Group, Inc. to perform the customary duties of Claims Administrator. Claims administration expenses shall not exceed $200,000, to be paid from the gross settlement amount. The Claims Administrator shall:

A.   Prepare, print, and mail the notice of settlement, the average settlement amount for each individual, and opt out forms in English and Spanish to the Class Members as provided in this Joint Stipulation.

B.   Skip trace and re-mail all returned, undelivered mail within seven days of receiving notice that the mailing was undeliverable.

C.   Establish an interest bearing bank account for the deposit of the gross settlement amount and deposit those funds into such account upon receipt.

D.   Identify the Class Members, determine the correct settlement payments and withholdings, and timely forward all requisite information to the Parties.

E.   Coordinate with Defendants to research and/or investigate any disputes, challenges or objections submitted by the Class Members regarding the provided information for the Class Members.

F.   Identify and report the Class Member opt-outs to Defendants.

G.   Prepare and circulate to counsel for the Parties a Declaration of Responses.

H.   Prepare and circulate to counsel for the Parties a Declaration of Compliance.

I.   Identify any checks that are not timely cashed in accordance with the terms of this Joint Stipulation and provide such information to the Parties.

J.   Confirm to the Parties the payments to be remitted by the Claims Administrator and mail settlement checks to the Class Members, the fees awarded to Class Counsel, the service award to Plaintiffs, and payment to the LWDA.

K.   Provide written confirmation to the Parties when the notice of settlement has been served pursuant to this Joint Stipulation.

L.   Attempt to resolve any disagreement with the Class Members and may request any information or assistance from Defendants or Class Counsel that the Claims Administrator believes may assist in resolving the disagreement. Defendants' records shall be presumed to be correct, which may only be

9

rebutted by evidence, including any documentary evidence, submitted by the Class Members.

M.      Provide to the Parties a final, detailed list of all payments from the gross settlement fund and provide to Defendants the Internal Revenue Service forms provided to the Class Members.

N.      Pay any remaining funds from "uncashed checks" and monies held in the Reserve Fund to the Interdisciplinary Center for Healthy Workplaces (see paragraph 29).

O.      All such other tasks required by this Joint Stipulation, as the Parties mutually agree or as the Court orders.

## NOTICE TO THE SETTLEMENT CLASS

33.      The Parties agree that within 15 calendar days after preliminary approval of this Joint Stipulation, Defendants will provide to the Claims Administrator all of the following information about the Class Members in a format requested by the Claims Administrator: (1) name, (2) most current mailing address and telephone number, (3) Social Security number, (4) dates of employment, and (5) total wage statements received during the class periods at issue. Prior to mailing, the Claims Administrator will perform a search based on the National Change of Address Database information to update and correct for any known or identifiable address changes.

34.      Within 21 calendar days after receipt of the class data list by the Claims Administrator, a Notice of Settlement in the form attached hereto as Exhibit 1, which includes an area for the individual's wage statements received and the amount of any approximate payment and as approved by the Court, shall be sent by first class mail in both English and Spanish by the Claims Administrator to the Class Members. Attached to the Notice of Settlement will be an Opt-Out Form, in both English and Spanish and in the form attached hereto as Exhibit 2, and as approved by the Court. Any returned envelopes from this mailing with forwarding addresses will be utilized by the Settlement Administrator to resend the Notice of Settlement and the Opt-Out Form returned to the Settlement Administrator.

35.     Notices returned to the Claims Administrator as non-delivered shall be skip-traced and re-sent to the forwarding address, if any, on the returned envelope within seven days of receiving notice that a Notice of Settlement was undeliverable. A returned Notice of Settlement will be forwarded only once by the Claims Administrator. Upon completion of these steps by the Claims Administrator, Defendants shall be deemed to have satisfied their obligation to provide the Notice of Settlement to the Class Members. Such affected persons shall be bound by a release of all claims alleged in the operative complaint in Action and all the terms of the Joint Stipulation and the Court's order and final judgment.

36.     Subject to Court approval, the Class Members shall have 45 calendar days from the date that Claims Administrator mails the Notice of Settlement to him or her to properly submit an Opt-Out Form to the Claims Administrator. Requests for exclusions postmarked after the close of the Opt-Out Period will not be honored. In order for the opt-out to be valid, the Class Members must mail the Opt-Out Form, signed and dated, to the Claims Administrator within 45 days from the date the Notice of Settlement is first mailed.

37.     Class Members shall have 30 days from the date the Notice of Settlement is first mailed to submit any dispute their pro-rata settlement payments.

38.     Class Members who do not effectively opt-out of the settlement as provided in paragraph 36 shall be given the opportunity to object to any of the terms of the settlement and to participate at the final fairness and approval hearing, in accordance with the instructions set forth in the Notice of Settlement. Class Members seeking to object to the terms of the settlement shall file such objection in writing with the Settlement Administrator, who will provide notice of such objection to the Parties' counsel. The Parties' counsel will then provide notice of the objections to the Court no later than 45 calendar days after the original date of mailing of the Notice of Settlement by the Claims Administrator. Class Members who fail to file and serve a timely written objection in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from objecting to the terms of the settlement unless otherwise ordered by the Court.

## RELEASE BY THE NAMED PLAINTIFFS AND THE CLASS

39.     Plaintiffs and Class Members who have not effectively opted-out of the settlement pursuant to paragraph 36, fully release and discharge Defendants and any parent, subsidiary, affiliate, predecessor or successor, and all agents, employees, officers, directors, insurers, and attorneys thereof from any and all claims, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorney fees, penalties, damages, action or causes of action contingent or accrued for, or which relate to or arise out of the allegations and claims asserted in the operative complaint in the Action and any and all related claims, including claims for unpaid wages, minimum wage, overtime, final wages, itemized wage statements or violations of California Labor Code sections 201, 202, 203, 218.5, 226, 226.7, 510, 512, 558, 1194, 1198, 2698 to 2699.5, the Industrial Welfare Commission Wage Orders, and Business and Professions Code section 17200 et seq., California Code of Civil Procedure 1021.5, damages and/or penalties whether any such related claim is known or unknown, contingent or accrued, statutory or common law; such related claims are released against the Released Parties, as well as interest and statutory penalties and other related penalties on any such related claims ("Released Claims"). Released Claims shall expressly exclude claims for unemployment compensation, disability, workers' compensation, discrimination, retaliation, other claims unrelated to the claims set forth in the Action. The time period covered by this release is April 12, 2009 through Preliminary Approval for Defendant Manpower Inc./California Peninsula and February 13, 2009 through Preliminary Approval for Defendants Manpower Inc., ManpowerGroup Inc., and ManpowerGroup US Inc. Notwithstanding the foregoing, nothing in this agreement releases any claim by any person based upon work performed and/or violations of any law occurring while such person was in the employ of either Manpower US Inc. and/or any Manpower franchise.

40.     The parties acknowledge and agree that the settlement shall be effective as a full and final accord and satisfaction and settlement of, and as a bar to, each and every claim that has been alleged or could have been alleged against Defendants arising out of the facts, circumstances, causes of action, and primary rights alleged in the Action. But, the parties acknowledge and agree that the donning and doffing claim in *Morales Rico et al. v. Manpower, Inc./California Peninsula*

JOINT STIPULATION OF CLASS ACTION SETTLEMENT
**Case No. 5:14-cv-03787-LHK**

*et al.*, pending in Monterey County Superior Court, Case No. M125340 ("*Rico*"), and the meal and rest period claims in *Martinez et al. v. Harmony Foods Corporation et al.* ("*Martinez*"), pending in Santa Cruz County Superior Court, Case No. CV177053, are not being released as part of this settlement. However, the parties further acknowledge and agree that they are not carving out any penalties derivative of the claims resolved in the Action

41.     Class Members will release all known and unknown claims against Defendants pursuant to California Civil Code section 1542 that have been alleged or could have been alleged arising out of the facts, circumstances, causes of action, and primary rights alleged in the Action. The class claims will be dismissed with prejudice following final approval of settlement by the Court.

42.     Plaintiffs will generally release all known and unknown claims against Defendants pursuant to California Civil Code section 1542. Plaintiffs will dismiss all claims with prejudice. Section 1542 of the Civil Code states:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

## DISMISSAL OF OTHER LAWSUIT FILED BY PLAINTIFFS

43.     As additional consideration for the settlement, the Parties stipulate and agree the lawsuit entitled *Padilla et al. v. Willner et al.*, Case No. 15-cv-04866-JST, shall be dismissed with prejudice in exchange for a mutual waiver of costs and fees within 90 days of final approval.

## DUTIES OF THE PARTIES FOLLOWING FINAL COURT APPROVAL

44.     Following final approval by the Court of the settlement provided for in this Joint Stipulation and payment of all funds due, Class Counsel will submit a proposed Final Order and Judgment:

    A.     Approving the settlement, adjudging the terms thereof to be fair, reasonable, and adequate, and directing consummation of its terms and provisions;

    B.     Approving Class Counsel's application for an award of attorney fees and costs;

C.  Approving the service award to Plaintiffs;

D.  Approving claims administration costs; and

E.  Entering judgment permanently barring and enjoining the Class Members who did not effectively opt-out from prosecuting against Defendants, any individual or class claims released herein, upon satisfaction of all payments and obligations hereunder.

45.  <u>Parties' Authority</u>: The signatories hereto hereby represent that they are fully authorized to enter into this Joint Stipulation and bind the Parties hereto to the terms and conditions thereof.

46.  <u>Payments</u>: The settlement embodied in this Joint Stipulation shall become final on the earlier of (i) the Court's final approval of this settlement if no objections by Class Members have been filed, or (ii) the final resolution of any appeal of objections such that the judgment is no longer subject to appeal.

47.  <u>Continuing Jurisdiction</u>: The Court shall retain continuing jurisdiction over Action to ensure the continuing implementation of the provisions of this Joint Stipulation. This Joint Stipulation is enforceable pursuant to Code of Civil Procedure section 664.6 and related Federal Rules of Civil Procedure.

48.  <u>No Prior Assignments</u>: The Parties and their counsel represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or rights herein released and discharged except as set forth herein.

49.  <u>No Admission</u>: Nothing contained herein, nor the consummation of this Joint Stipulation, is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Defendants. The Parties hereto have entered into this Joint Stipulation solely with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses.

50.  <u>Enforcement Actions</u>: In the event that one or more of the Parties to this Joint Stipulation institutes any legal action or other proceeding to enforce the provisions of this Joint

14

Stipulation or to declare rights and/or obligations under this Joint Stipulation, the successful party shall be entitled to recover from the unsuccessful party reasonable attorney fees and costs, including expert witness fees incurred in connection with any enforcement actions.

51. <u>Notices</u>: Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing, addressed as follows:

TO PLAINTIFFS AND CLASS MEMBERS:

B. James Fitzpatrick CA Bar No. 129056
bfitzpatrick@fandslegal.com
Charles Swanston CA Bar No. 181882
cswanston@fandslegal.com
FITZPATRICK, SPINI & SWANSTON
555 S. Main Street
Salinas, CA 93901
Telephone:    831.755.1311

Patrick D. Toole CA Bar No. 190118
ptoole@wjhattorneys.com
WAGNER JONES HELSLEY PC
265 E. River Park Circle, Suite 310
Fresno, CA 93720
Telephone:    559.233.4800

TO DEFENDANTS:

Spencer C. Skeen CA Bar No. 182216
spencer.skeen@ogletreedeakins.com
Tim L. Johnson CA Bar No. 265794
tim.johnson@ogletreedeakins.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
4370 La Jolla Village Drive, Suite 990
San Diego, CA 92122
Telephone:    858.652.3100

52. <u>Construction</u>: The Parties hereto agree that the terms and conditions of this Joint Stipulation are the result of lengthy, intensive arms-length negotiations between the Parties, and this Joint Stipulation shall not be construed in favor of or against any party by reason of the extent to which any party or his, her or its counsel participated in the drafting of this Joint Stipulation.

53. <u>Captions and Interpretations</u>: Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or

JOINT STIPULATION OF CLASS ACTION SETTLEMENT
**Case No. 5:14-cv-03787-LHK**

describe the scope of this Joint Stipulation or any provision hereof. Each term of this Joint Stipulation is contractual and not merely a recital.

54.　<u>Modification</u>: This Joint Stipulation may not be changed, altered, or modified, except in writing and signed by the Parties hereto, and approved by the Court. This Joint Stipulation may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties hereto.

55.　<u>Integration Clause</u>: This Joint Stipulation contains the entire agreement between the Parties relating to the settlement and transaction contemplated hereby, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a party or such party's legal counsel, are merged herein. No rights hereunder may be waived except in writing.

56.　<u>Binding on Assigns</u>: This Joint Stipulation shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators, successors and assigns.

57.　<u>Counterparts</u>: This Joint Stipulation may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Stipulation, which shall be binding upon and effective as to all Parties.

[SIGNATURES ON NEXT PAGE]

<u>**PLAINTIFFS/CLASS REPRESENTATIVES AND CLASS COUNSEL**</u>

DATED: June 8, 2016

By: _____
Claudia Padilla

DATED: June 8, 2016

By: _____
Lesli Guido

DATED: June 8, 2016

FITZPATRICK, SPINI & SWANSTON

By: */s/ Charles Swanston*
B. James Fitzpatrick
Charles Swanston
Attorneys for Plaintiffs

<u>**DEFENDANTS AND COUNSEL FOR DEFENDANTS**</u>

DATED: June 8, 2016

By: _____
Print Name: Darryl Green
On behalf of Defendant ManpowerGroup Inc.
(formerly known as Manpower Inc.)

DATED: June 8, 2016

By: _____
Print Name: Darryl Green
On behalf of Defendant Manpower,
Inc./California Peninsula

DATED: June 8, 2016

By: _____
Print Name: Darryl Green
On behalf of Defendant ManpowerGroup US
Inc.

DATED: June 8, 2016

OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.

By: */s/ Tim L. Johnson*
Spencer C. Skeen
Tim L. Johnson
Attorneys for Defendants

25070543.1

JOINT STIPULATION OF CLASS ACTION SETTLEMENT
Case No. 5:14-cv-03787-LHK

Exhibit 1 to

Joint Stipulation of Class Action Settlement

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT AND
## HEARING DATE FOR COURT APPROVAL

*Mata et al. v. Manpower, Inc./California Peninsula, Case No. 5:14-cv-03787*

---

**As a current or former non-exempt associate of Manpower, Inc./California Peninsula, Manpower, Inc., ManpowerGroup, Inc., or ManpowerGroup US Inc. in California, you may be entitled to receive money from a class action settlement.**

---

CPT ID: <<CPT ID>>            Please provide current address (if different) here:
    <<Name>>
    <<Address1>>            _____
    <<Address2>>            _____
    <<City>>, <<State>> <<Zip Code>>            _____

*The United States District Court, Northern District of California authorized this Class Notice.*
*This is not a solicitation from a lawyer.*

YOU MAY BE ENTITLED TO RECEIVE MONEY FROM A CLASS ACTION SETTLEMENT IF YOU ARE A CURRENT OR FORMER ASSOCIATE WHO WORKED FOR MANPOWER, INC./CALIFORNIA PENINSULA AFTER APRIL 12, 2009 OR FOR MANPOWER INC., MANPOWERGROUP INC., OR MANPOWERGROUP US INC. AFTER FEBRUARY 13, 2009.

- A proposed settlement of $2,900,000 (the "Total Settlement Amount") will be used to pay claims to: (1) non-exempt, hourly paid associates of Manpower, Inc./California Peninsula who worked after April 12, 2009 in California or (2) non-exempt, hourly paid associates of Manpower Inc., ManpowerGroup Inc., or ManpowerGroup US Inc. who worked after February 13, 2009 in California (such periods of time, the "Class Period" and such employees, the "Class Members").

- The settlement resolves a lawsuit entitled *Mata et al. v. Manpower, Inc./California Peninsula*, Case No. 5:14-cv-03787 (the "Lawsuit") over whether Manpower, Inc./California Peninsula, Manpower Inc., ManpowerGroup Inc., and ManpowerGroup US Inc. (collectively "Manpower") properly paid associates for all hours worked and other legal consequences that would follow from not doing so. This settlement avoids the costs and risks from continuing the Lawsuit, pays money to persons like you, and releases Manpower from alleged liability.

- The Court has not made a determination of the validity of the claims in the Lawsuit. Manpower denies any and all liability arising from any of the claims and contends that at all relevant times they properly compensated all associates and fully complied with all applicable laws.

- Class Members will receive a base payment $12.50 in addition to a pro-rata payment based on the number of wage statements received during the Class Period.

- ## **PLEASE READ THIS CLASS NOTICE CAREFULLY. YOUR LEGAL RIGHTS ARE AFFECTED BY IT.**

| HOW MUCH WILL I GET? | |
| --- | --- |
| Your received total number of <<WageStatements>> wage statements during the Class Period | |
| It is expected that you will receive approximately <<EstISP>> | |

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
| --- | --- |
| DO NOTHING | Receive a payment and give up your legal rights to pursue claims released by the settlement of the Lawsuit. |
| OPT OUT | Receive no payment and retain your legal rights to pursue claims that would otherwise be released by the settlement of the Lawsuit. |
| OBJECT | If you do not opt out, you may write to the Settlement Administrator, CPT Group, about why you do not like the settlement and they will forward your concerns to counsel which will then be provided to the Court. |
| ATTEND A HEARING | You have the right to attend a fairness hearing that will be conducted by the Court, but you are not required to attend. If you timely file and serve a written objection, and if you also want to speak about your objection at the hearing, you should send a letter to the Settlement Administrator, CPT Group, providing notice of your intention to appear and speak at the hearing. |

## IMPORTANT INFORMATION ABOUT THE PROPOSED SETTLEMENT

### 1. Why did I get this Class Notice?

You were sent this Class Notice because you have a right to know about the proposed settlement in the Lawsuit and about all of your options before the Court rules whether to finally approve the settlement. If the Court approves the settlement and after any objections and appeals are resolved, a "Settlement Administrator" appointed by the Court will make the payments that the settlement allows. This Class Notice explains the Lawsuit, the proposed settlement, your legal rights, and what benefits are available and how to receive them.

The Court in charge of this case is the United States District Court, Northern District of California. The persons who sued are called Plaintiffs and the organizations they sued are called Defendants.

### 2. What is the Lawsuit about?

Claudia Padilla and Lesli Guido, the Representative Plaintiffs, in their Lawsuit alleged multiple violations of the California Labor Code, the California Business and Professions Code, and the California Private Attorneys General Act, including causes of action for: (1) failure to pay reporting time pay; (2) failure and refusal to pay agreed wages; (3) failure to pay wages due and payable after demand has been made; (4) failure to pay minimum wages; (5) knowing and intentional failure to comply with itemized employee wage statement provisions; (6) failure to pay wages timely; and (7) failure to pay all wages upon termination.

### 3. Why is there a settlement?

The parties disagree on the probable outcome of the case with respect to liability, damages, and how much money could be recovered if the Representative Plaintiffs won at trial. Manpower believes that the Representative Plaintiffs would not prevail if this case went to trial. The Court has not decided in favor of the Representative Plaintiffs or Manpower. There has been no trial in this case. Instead, both sides recognize the risks, expenses, and disruption that are associated with continued litigation and they have therefore chosen to resolve their differences by entering into a

settlement. By doing so, the parties can avoid the cost of a trial, yet Class Members are still entitled to receive payments if they comply with the instructions in this Class Notice. The parties entered into this settlement after arms-length negotiations while using the services of an experienced and neutral mediator. The Representative Plaintiffs and Class Counsel believe that the proposed settlement is fair and reasonable and is in the best interest of the Class Members.

## 4. What is a class action settlement?

The Court must approve the terms of the proposed settlement as fair and reasonable. Once approved, the settlement will affect all Class Members except those who have properly opted out. This Class Notice explains your legal rights, the terms of the settlement, what you must do to participate, and the amount of money you may receive. Please read this entire Class Notice carefully.

## 5. What should I do?

You can do nothing and if you are entitled to a payment you will be paid. Be mindful, however, that if this Class Notice reaches you and the address where you now live is different, you need to contact the Settlement Administrator and provide updated information so that any future correspondence or the settlement check itself reaches you and is not returned as an address unknown.

## 6. How much will my payment be?

After all fees, costs, and offsets are taken as set forth under paragraph 24 of the parties' Joint Stipulation of Class Settlement (which is available for review), the remainder will be used to pay Class Members a base payment $12.50 in addition to a pro-rata payment based on the number of wage statements received during the Class Period.

If you do not dispute your wage statement calculation and do not opt out of the settlement, you will be bound by the settlement and receive a settlement payment. **In other words, you do not need to take any action to receive a settlement payment.**

## 7. When would I get my payment?

The Court will hold a hearing on **[ENTER DATE AND TIME]** to decide whether to approve the proposed settlement. If the Court approves the settlement and anyone objects, there may be appeals. It is always uncertain when these objections and appeals can be resolved, and resolving them can take time. To check on the progress of the settlement, call the Settlement Administrator at 1-XXX-XXX-XXXX, or contact Class Counsel (see below for Class Counsel's contact information.). *Please be patient.*

## 8. What am I releasing?

Upon final approval by the Court of the settlement, and except as to such rights or claims as may be created by the settlement, Plaintiffs and Class Members who have not effectively opted-out of the settlement as described below fully release and discharge Manpower, Inc./California Peninsula, Manpower Inc., ManpowerGroup Inc., and ManpowerGroup US Inc. and any parent, subsidiary, affiliate, predecessor or successor, and all agents, employees, officers, directors, insurers, and attorneys thereof from any and all claims, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorney fees, penalties, damages, action or causes of action contingent or accrued for, or which relate to or arise out of the allegations and claims asserted in the operative complaint in the Lawsuit and any and all related claims, including claims for unpaid wages, minimum wage, overtime, final wages, itemized wage statements or violations of California Labor Code sections 201, 202, 203, 218.5, 226, 226.7, 510, 512, 558, 1194, 1198, 2698 to 2699.5, the Industrial Welfare Commission Wage Orders, and Business and Professions Code section 17200 et seq., California Code of Civil Procedure 1021.5, damages and/or penalties whether any such related claim is

known or unknown, contingent or accrued, statutory or common law; such related claims are released against the Released Parties, as well as interest and statutory penalties and other related penalties on any such related claims ("Released Claims"). Released Claims shall expressly exclude claims for unemployment compensation, disability, workers' compensation, discrimination, retaliation, other claims unrelated to the claims set forth in the Lawsuit. The time period covered by this release is April 12, 2009 through Preliminary Approval for Defendant Manpower Inc./California Peninsula and February 13, 2009 through Preliminary Approval for Defendants Manpower Inc., ManpowerGroup Inc., and ManpowerGroup US Inc. Notwithstanding the foregoing, nothing in the settlement releases any claim by any person based upon work performed and/or violations of any law occurring while such person was in the employ of either Manpower US Inc. and/or any Manpower franchise.

Class Members will release all known and unknown claims against Manpower pursuant to California Civil Code section 1542 that have been alleged or could have been alleged arising out of the facts, circumstances, causes of action, and primary rights alleged in the Lawsuit. The class claims will be dismissed with prejudice following final approval of settlement by the Court.

## 9. How can I opt out of this settlement?

You can opt out of this settlement and retain your rights. To do so, you must prepare and submit in writing your signed and dated statement that you want to be excluded from the settlement. You will have 45 days from the date of mailing of this Class Notice to do so. Your written statement must be mailed to the Settlement Administrator, CPT Group, 16630 Aston, Irvine, California 92606 and be postmarked no later than **[ENTER DATE]**, or it will not be considered and you will be bound by the settlement.

## 10. Do I have a lawyer in this case?

The Court has appointed B. James Fitzpatrick and Charles Swanston and FITZPATRICK, SPINI & SWANSTON, 555 S. Main Street, Salinas, California 93901, telephone 831.755.1311, and Patrick D. Toole and WAGNER JONES HELSLEY PC, 265 E. River Park Circle, Suite 310, Fresno, California 93720, telephone 559.233.4800, to represent you and other Class Members in the Lawsuit. These lawyers are called Class Counsel. They will be compensated from the Total Settlement Amount as discussed in this Class Notice. If you want to be represented by your own lawyer, you may hire one at your own expense.

## 11. How will the lawyers be paid?

Class Counsel will ask the Court to award them fees up to 25% of the Total Settlement Amount. Class Counsel will also ask the Court to award them costs incurred in connection with the Lawsuit. The Court may choose to award less than the amount requested by Class Counsel.

## 12. How do I tell the Court that I do not like the settlement?

You can ask the Court to deny approval by filing an objection. You cannot ask the Court to order a larger settlement; the Court can only approve or deny the settlement. If the Court denies approval, no settlement payments will be sent out and the Lawsuit will continue. If that is what you want to happen, you must object.

You may object to the proposed settlement in writing. You may also appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for paying that attorney. All written objections and supporting papers must (a) clearly identify the case name and number (*Mata et al. v. Manpower, Inc./California Peninsula*, Case No. 5:14-cv-03787), (b) be submitted to the Court either by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, located at 280 S 1st St, San Jose, California 95113, or by filing them in person at any location of the United States District Court for the Northern District of California, and (c) be filed or postmarked on or before **[ENTER DATE]**.

## 13. When and where will the Court decide whether to approve the settlement?

The Court will hold a fairness hearing **[ENTER DATE AND TIME]** at the United States District Court, Northern District of California, Courtroom 8, located at 280 S 1st St, San Jose, California 95113. At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections and they have been properly lodged, the Court will consider them. The Court will listen to people who have asked to speak at the hearing. The Court may also decide how much to pay to Class Counsel. At or after the hearing, the Court will decide whether to approve the settlement. We do not know how long this decision will take.

## 14. Do I have to come to the hearing?

No. Class Counsel will answer any questions that the Court may have. But, you are welcome to come at your own expense. If you sent an objection, you do not have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not required.

## 15. May I speak at the hearing?

You may ask the Court for permission to speak at the fairness hearing. To do so, you must send a letter stating that it is your "Notice of Intention to Appear" in the settlement. Be sure to include your name, address, and telephone number. Your Notice of Intention to Appear must be postmarked no later than **[ENTER DATE]**, and be sent to the Settlement Administrator, CPT Group, at the address listed above.

## 16. What happens if I do nothing at all?

You will participate in the settlement. You will be bound by the release as set forth herein.

### GETTING MORE INFORMATION

This Class Notice summarizes the proposed settlement. You may call or contact Class Counsel or the Settlement Administrator if you would like more information about the case. You may call 1-XXX-XXX-XXXX or write the Settlement Administrator, CPT Group, Inc., located at 16630 Aston, Irvine, California 92606.

You can also access the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, located at 280 S 1st St, San Jose, California 95113, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

The Settlement Administrator has also setup a website which has links to this Class Notice and other documents related to the proposed settlement, including the Joint Stipulation of Class Settlement. The website is: **[ENTER WEBSITE URL]**.

### PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.

Exhibit 2 to

Joint Stipulation of Class Action Settlement

# [OPT-OUT FORM]

**TO OPT-OUT FROM THE LAWSUIT, YOU MUST COMPLETE THIS FORM AND RETURN IT TO CPT GROUP, INC., LOCATED AT 16630 ASTON STREET, IRVINE, CA 92606, BY NO LATER THAN [ENTER DATE].**

I, _____, wish to opt-out from the Lawsuit. If I opt-out, I understand that I will receive no money or other benefits from the Lawsuit, and I will not be bound by the Joint Stipulation of Settlement and Final Order in this matter. I also understand that if I opt-out I will retain my legal rights to pursue claims that would otherwise be released by the settlement of the Lawsuit.

Your Current Address:

_____

_____

_____

Last Four Digits of Social Security Number: _____

Current Telephone Number: _____

Signature: _____

**RETURN THIS FORM NO LATER THAN [ENTER DATE] TO CPT GROUP, INC., LOCATED AT 16630 ASTON STREET, IRVINE, CA 92606. IF THIS FORM IS NOT POSTMARKED BY [ENTER DATE], YOU WILL NOT BE ELIGIBLE TO OPT-OUT FROM THE SETTLEMENT OF THE LAWSUIT.**

25078769.1

EXHIBIT "B"



**Contact Name:** Matthew D. Weiss
Henry Arjad
**Corporate Headquarters**
16630 Aston, Irvine CA 92606
Matt@cptgroup.com
**Direct Number:** (949) 428-1020
**Headquarters:** (800) 542-0900
**Fax Number:** (949) 428-1011

CPT**Group**
Class Action Administrators
www.cptgroup.com

## Case Name: Mata v Manpower, Inc.

| | |
|---|---|
| Date: **June 2, 2016** | **All-In Settlement** |
| Requesting Attorney: **Tim L. Johnson** | * Class Members: **58,500** |
| Plaintiff or Defense: **Defense** | ** Opt-Out Rate: **1%** |
| Firm Name: **Ogletree Deakins** | Opt-Outs Received: **585** |
| Telephone: **(858) 652-3100** | Postage Total: **$57,824.28** |
| Email: tim.johnson@ogletreedeakins.com | Grand Total: **$234,424.83** |
| | *** DISCOUNTED FLAT FEE: **$200,000.00** |

* This number is an estimate provided by counsel. If the actual number is different, our cost estimate will change accordingly.

** For ease of comparison, in the event competing estimates use an alternate filing rate to calculate estimated cost, please advise us so that we may modify the estimate accordingly.

*** This price is valid for administration of a maximum of 585 opt-out's filed. Any additonal opt-out's filed above 585 will be billed at the rate of $8.00 per member.

## Case Setup

| Case Setup/Create a Unified Mailing List | | | |
|---|---|---|---|
| **Administrative Tasks:** | **Unit Price** | **Pieces/Hours** | **Cost Estimate** |
| Project Manager | $95.00 | 10 | $950.00 |
| System Programming/Data Base Setup | $150.00 | 10 | $1,500.00 |
| Toll Free Number Establish/Setup* | $150.00 | 2 | $300.00 |
| Spanish Translation | $1,200.00 | 1 | $1,200.00 |
| | | **Total** | **$3,950.00** |

* Up to 120 days after disbursement

## Notification

| Notice & Request for Exclusion Form Mailed in English and Spanish (up to 2 oz.) | | | |
|---|---|---|---|
| **Administrative Tasks:** | **Unit Price** | **Pieces/Hours** | **Cost Estimate** |
| NCOA | $150.00 | 1 | $150.00 |
| Project Manager-Opt-Out/Notice Format | $95.00 | 2 | $190.00 |
| Merged Data | $0.05 | 58,500 | $2,925.00 |
| Mailing of Notice Pack | $0.75 | 58,500 | $43,875.00 |
| Estimated Postage (up to 2 oz.)* | $0.45 | 58,500 | $26,325.00 |
| | | **Total** | **$73,465.00** |

*Additional charges will apply if the postage exceeds 2 oz. The final rate will be determined at the time of mailing.

## Returned Mail

| Notices Returned as Undeliverable | | | |
|---|---|---|---|
| **Administrative Tasks:** | **Unit Price** | **Pieces/Hours** | **Cost Estimate** |
| Update Undeliverable | $0.35 | 9,945 | $3,480.75 |
| Skip Traces | $0.55 | 8,652 | $4,758.60 |
| Remail Packs | $0.80 | 6,464 | $5,171.20 |
| Estimated Postage | $0.49 | 6,464 | $3,167.36 |
| Clerical Staff | $60.00 | 50 | $3,000.00 |
| | | **Total** | **$19,577.91** |

## Opt-Out Processing

| Process Opt-Outs, Deficiencies & Other Requests from Class Members | | | |
|---|---|---|---|
| Administrative Tasks: | Unit Price | Pieces/Hours | Cost Estimate |
| Programming of Opt-Out Data Base | $150.00 | 4 | $600.00 |
| Opt-Out Processing | $5.00 | 585 | $2,925.00 |
| Clerical Staff | $60.00 | 10 | $600.00 |
| Deficiency/Dispute Letters | $20.00 | 30 | $600.00 |
| Project Manager | $95.00 | 4 | $380.00 |
| Call Center Support | $2.00 | 5,850 | $11,700.00 |
| | | **Total** | **$16,805.00** |

## SSN Verification

| Verify SSN for Validity, Send Letters to Mis-Matches | | | |
|---|---|---|---|
| Administrative Tasks: | Unit Price | Pieces/Hours | Cost Estimate |
| Programming for SSN Selection | $150.00 | 1 | $150.00 |
| Project Manager | $95.00 | 3 | $285.00 |
| SSN Verification | $0.10 | 57,915 | $5,791.50 |
| Follow up on Mis-Matches | $5.00 | 580 | $2,900.00 |
| | | **Total** | **$9,126.50** |

## Distribution

| Create & Manage QSF / Print & Mail Checks, 1099/W-2 | | | |
|---|---|---|---|
| Administrative Tasks: | Unit Price | Pieces/Hours | Cost Estimate |
| Programming Database-Calculate Totals | $150.00 | 3 | $450.00 |
| Project Supervisor Review of Distribution | $150.00 | 60 | $9,000.00 |
| Project Manager-Correspond w/Attorney | $95.00 | 30 | $2,850.00 |
| Obtain EIN, Setup QSF/Bank Account | $150.00 | 3 | $450.00 |
| Programming/Setup & Printing of Checks | $150.00 | 10 | $1,500.00 |
| Print Mail Checks, W-2/1099 (8x10 sheet) | $0.85 | 57,915 | $49,227.75 |
| Postage | $0.45 | 57,915 | $26,061.75 |
| | | **Total** | **$89,539.50** |

## Post-Distribution

| Reissue Checks When Necessary / Annual Tax Reporting / Final Reporting & Declaration | | | |
|---|---|---|---|
| Administrative Tasks: | Unit Price | Pieces/Hours | Cost Estimate |
| Re-Issue Checks as Required | $5.00 | 580 | $2,900.00 |
| Project Supervisor -Account Recons | $150.00 | 6 | $900.00 |
| Skip Trace | $0.75 | 4,633 | $3,474.75 |
| Remail Undeliverable Checks | $2.00 | 4,633 | $9,266.00 |
| Postage | $0.49 | 4,633 | $2,270.17 |
| Project Supervisor-Reconcile Uncashed Chk | $150.00 | 1 | $150.00 |
| Programming- Final Reports | $150.00 | 2 | $300.00 |
| Project Manager - Acnt Files Sent to Atty | $150.00 | 2 | $300.00 |
| Project Supervisor - Final Declaration | $150.00 | 2 | $300.00 |
| CA Tax Preparation* | $600.00 | 1 | $600.00 |
| Annual Tax Reporting to IRS* | $1,000.00 | 1 | $1,000.00 |
| QSF Annual Tax Reporting | $500.00 | 1 | $500.00 |
| | | **Total** | **$21,960.92** |

*CPT will file Federal and California taxes in accordance with current state and federal regulations. Additional charges will apply if the Settlement/Order/parties require(s) multiple state tax filings.

| | | **Grand Total:** | **$234,424.83** |
|---|---|---|---|

## Terms and Conditions

The "flat fee" amount for cost of administration is based on the specifications and information (e.g. class member size, claims to be filed) provided by Counsel/Client at the time this Agreement is prepared. The flat fee amount is subject to change, as and when Counsel/Client request additional work and/or provide changes, such as an increase in class member size, or changes in administrative duties/scope, which changes shall be set forth in writing by Counsel/Client. No provisions have been made for any services not specified in this Agreement. Prices and rates are subject to review and modification, pending review of the operative settlement agreement and further consultation with Counsel/Client. Counsel/Client shall, in addition to the flat fee, pay any applicable sales tax. **\*PRICING GOOD FOR 90 DAYS\***

**Database & Mailing Requirements:** The Agreement assumes that data provided to CPT Group, Inc. ("CPT") will be in ready-to-use condition, and that all data is provided in a single, comprehensive spreadsheet. CPT will not be liable for any errors or omissions arising due to additional work required for preparation of the original database, including, but not limited to data entry of claim information from claim forms. A minimum of five (5) business days is required for processing prior to the anticipated mailing date. Additional time will be required for mailings in excess of 5,000 pieces. CPT will keep counsel apprised of the estimated mailing date. All claims data, reports and computer compiled information relating to the matter covered by this Agreement shall be retained by CPT for its exclusive use. During the provision of the Services the parties may wish to communicate electronically with each other at a business e-mail address. However, the electronic transmission of information cannot be guaranteed to be secure or error free and such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use. Accordingly, each part agrees to use commercially reasonable procedures to check for the then most commonly known viruses and to check the integrity of data before sending information to the other electronically, but each party recognizes that such procedures cannot be a guarantee that transmissions will be virus free. It remains the responsibility of the party receiving an electronic communication from the other to carry out a virus check on any attachments before launching any documents whether received on disk or otherwise.

**Other:** CPT's general policy is to not accept claims via facsimile. However, in the event that facsimile filing of claims must be accepted, CPT will not be held responsible for any issues and/or errors arising out of said filing. Furthermore, CPT will require disclaimer language regarding facsimile transmissions. CPT will not be responsible for any acts or omissions caused by the U.S.P.S. CPT will not make payments to any claimants without verified, valid Social Security Numbers. CPT will retain all other class member and putative class member correspondence (including without limitation, claim forms and opt out forms) for one year after final distribution of funds or benefits, unless directed otherwise in writing by the client.

**Payment Terms:** *All postage charges and 50% of the final administration charges are due at the commencement of the case and will be billed immediately upon receipt of the data and/or notice documents*. CPT bills are due upon receipt, unless otherwise negotiated and agreed to with CPT by Counsel/Client. In the event settlement terms provide that CPT is to be paid out of the settlement fund, CPT will request that Counsel/Client endeavor to make alternate payment arrangements for CPT charges that are due at the commencement of the case. The entire remaining balance is due and payable at the time the settlement account is funded by defendant, or no later than the time of disbursement. Amounts not paid within thirty (30) days are subject to a service charge of 1.5% per month or the highest rate permitted by law.

**Accept Case Services:** Receipt of any data or documents from Counsel/Client by CPT shall constitute constructive acceptance of this Agreement. Any deviation from this Agreement, including its terms and conditions, must be addressed by the parties in writing prior to or at the commencement of the case administration.

**Applicable Law; Personal Jurisdiction; Venue:** This Agreement shall be construed in accordance with, and all disputes hereunder shall be governed by, the laws of the State of California. All parties to this Agreement agree to submit to personal jurisdiction in the County of Orange, State of California. Any dispute that arises under or relates to this Agreement (whether contract, tort or both) shall be resolved in the applicable federal or state court in the County of Orange, State of California.

**Attorneys' Fees:** In the event either party commences litigation (including arbitration) to enforce or interpret this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees and all litigation-related costs (including expert witnesses' fees) incurred in addition to all other items of recovery permitted by law.

**Integration and Modification:** This Agreement contains the entire and only Agreement between the parties with respect to services requested, and there are no other promises, representations, or warranties, either expressed or implied. The provisions of this Agreement shall not be changed or modified except for an instrument in writing signed by the parties hereto.

**Termination:** This Agreement may be terminated by either party on thirty (30) days prior written notice if either party continues to materially fail to perform or comply with this Agreement or any of its provisions, after receiving written notice of such non-compliance. Such termination shall be effective thirty calendar (30) days after notice of termination to the defaulting party if the default(s) have not been cured within such thirty (30) day period, unless the default is of a nature which is permanent and not capable of cure, in which event, termination shall be effective upon receipt of said notice. The rights and remedies of the parties provided herein shall not be exclusive and are in addition to any and all other rights and remedies provided by law or this Agreement. Upon termination, CPT will do a final accounting with respect to amounts due it or Counsel/Client, as applicable.

**Document Retention:** Unless otherwise directed in writing by Counsel/Client, CPT will destroy all undeliverable mail upon Final Approval of the settlement. CPT will image all claim forms and correspondence. CPT will maintain the original documents at minimum one year after Final Approval at which point all original documents are subject to being destroyed, unless otherwise directed in writing by the Counsel/Client. CPT will retain all bank and tax documentation in compliance with state and federal requirements.

**Severability:** The invalidity, in whole or in part, of any provision of this Agreement shall not affect the validity or enforceability of any other of its provisions.

**Notices:** Any notice or other communication required or permitted to be given under this Agreement shall be in writing and shall be sufficiently given if personally served or sent by registered or certified mail (or similar process), return receipt requested, postage prepaid, and addressed to the other party as follows, until one party has notified in writing the other party of any new address:

| | |
|---|---|
| If to CPT: | Mr. Henry Arjad, President |
| | CPT Group, Inc. |
| | 16630 Aston Street |
| | Irvine, California 92606 |
| | |
| If to Counsel/Client: | At the address set forth at the end of this Agreement |

**Waiver:** Any term or provision of this Agreement may be waived in writing at any time by the party entitled to the benefit thereof. No waiver of any of the provisions of this Agreement will be deemed or will constitute a waiver of any other provision, whether or not similar, nor will any waiver constitute a continuing waiver.

Excuse from Performance: If any party fails to perform its obligations because of strikes, lockouts, labor disputes, electrical outs, embargoes, acts of God, inability to obtain labor or materials or reasonable substitutes for labor or materials, governmental restrictions, governmental regulations, governmental controls, judicial orders, enemy or hostile governmental action, civil commotion, fire or other casualty, or other causes beyond the reasonable control of the party obligated to perform, then that party's performance shall be excused.

This Agreement, including these Terms and Conditions, are hereby accepted by the parties:

CPT Group, Inc.